# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| IN THE MATTER OF THE | § | No. 3:18-mj-765-BN |
| EXTRADITION OF | § | |
| | § | |
| TITO JAY RISNER A/K/A | § | |
| JAY MICHAEL RISNER A/K/A | § | |
| TITO RISNER A/K/A | § | |
| JOSE TITO RODRIGUEZ CALDERON. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On November 16, 2018, the United States of America filed a complaint for the extradition of Tito Risner a/k/a Jay Risner a/k/a Jose Tito Rodriguez Calderon ("Risner") at the request of the Government of the Republic of Colombia ("Colombia") pursuant to the extradition treaty between the United States and Colombia, the Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) (the "Treaty"). The United States seeks Risner's extradition in accordance with its treaty obligations to Colombia, *see* Dkt. No. 1, and has moved to detain Risner following his arrest on a warrant [Dkt. No. 22] issued in connection with the United States's complaint filed under 18 U.S.C. § 3184, *see* Dkt. Nos. 5 & 14, and "respectfully requests that the fugitive be detained pending the extradition hearing in this matter and thereafter if the Court enters an order finding him extraditable," Dkt. No. 14 at 14.

Risner, through his retained counsel, filed a Motion for Bail, *see* Dkt. No. 24,

asserting that "[s]pecial circumstances support bail, and Mr. Risner is neither a flight risk nor a danger to the community in which he has resided peacefully since 1969," and that, "[b]ased on the combination of factors present in this matter, the setting of reasonable bail is warranted," *id.* at 1.

Risner also filed a Motion to Dismiss, *see* Dkt. No. 23, asserting that, "[i]n this extradition request, Colombia has failed to follow extradition procedures and provide all required documents pursuant to Article 9 of the Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) ('Treaty')," and that "Colombia is in violation of the terms of the treaty, therefore this matter must be dismissed," *id.* at 1.

The United States then filed a Notice of Filing of Supplement to Extradition Request, *see* Dkt. No. 26, in which it explained:

> On November 16, 2018, Tito Risner a/k/a Jay Risner a/k/a Jose Tito Rodriguez Calderon ("Risner," "Rodriguez Calderon," or the "fugitive") was arrested on the basis of a complaint seeking his extradition to the Republic of Colombia ("Colombia") to serve a sentence for aggravated homicide. Attached to the filed complaint was the original Extradition Request submitted by the Government of Columbia (ECF No. 1-1).
>
> On February 23, 2018, the United States sent a diplomatic note to Columbia requesting that the Government of Columbia submit a certified supplement to the original extradition package from Columbia. In this diplomatic note, the United States requested that Columbia submit a Supplement which provides a text of the applicable Columbian laws describing the essential elements and designation of the offenses for which extradition is requested, and describing the time limit on the prosecution of the execution of punishment for the offenses as required by Articles 9(2) and 9(5) of the Extradition Treaty between the United States and the Republic of Columbia.
>
> Attached hereto as Exhibit A is the certified Supplement (dated July 23, 2018) with Spanish and English translations which was provided to the United States by the Government of Columbia. This Supplement

to the original Extradition Request is admissible at the extradition hearing pursuant to 18 U.S.C. § 3190.

*Id.* at 1-2.

And the United States filed the Government's Response in Opposition to Fugitive's Motion for Bail, *See* Dkt. No. 27, and Risner filed his Relator's Reply to Government's Response to Motion for Bail, *see* Dkt. No. 28.

The undersigned United States magistrate judge is authorized to conduct the proceedings in this matter under 18 U.S.C. § 3184 and 28 U.S.C. § 636. *See Noel v. U.S.*, 12 F. Supp. 2d 1300, 1305 (M.D. Fla. 1998).

The Court held a hearing on December 19, 2018 on the United States's Motion for Detention [Dkt. No. 5] and Risner's Motion for Bail [Dkt. No. 24], and Risner, his counsel, and the government's counsel appeared. *See* Dkt. Nos. 11, 17, & 29.

For the reasons explained below, the Court GRANTS the United States's Motion for Detention [Dkt. No. 5] and DENIES Risner's Motion for Bail [Dkt. No. 24].

## Background

As background, the United States asserts that,

[a]ccording to information the Government of Colombia has provided:
On December 9, 1994, the Colombian Criminal Court Six, Circuit of Cartagena, found the fugitive guilty of the aggravated homicide of his wife, Patricia Gomez de Risner (the "victim" or "Risner's wife"), in violation of Article 323 of Colombia's Criminal Code, and sentenced him to twenty years imprisonment. The conviction was affirmed on appeal, first by the Superior Tribunal of the Judicial District of Cartagena on April 20, 1995, and then by the Supreme Court of Justice, Criminal Cassation Division, on November 23, 1998. The extradition request from the Government of Colombia contains supporting documentation including the aforementioned Colombian court decisions, which reflect the following:

a. The victim was Risner's wife. She was born in Colombia, and lived in Texas.

b. In early July, 1990, the victim and Risner were visiting Cartagena, Colombia. On July 4, 1990, the victim was shot fatally while walking with her sister and mother.

c. Colombian police officers arrested Raul Alberto Ramirez Montoya (Ramirez Montoya) and Yolanda Zuluaga Velez (Zuluaga Velez) at the scene. The two were implicated in the homicide through questioning and were convicted of the murder.

d. Hotel and other records reflected that the Risners arrived at the Hotel Bellavista in Cartagena three days before the murder, on July 1, 1990. Risner's co-defendant and relative, Jairo Hernandez Pachon ("Hernandez Pachon"), arrived at the same hotel on the same date, and shared a room with Ramirez Montoya and Zuluaga Velez, adjacent to the room that Risner and his wife occupied. [In the same proceeding as Risner, the court convicted Hernandez Pachon of being an accomplice to the aggravated homicide and sentenced Hernandez Pachon to ten years imprisonment.] Hernandez Pachon also paid Ramirez Montoya and Zuluaga Velez's hotel bill. Given their proximity to the victim while she was a guest at the hotel, Ramirez Montoya and Zuluaga Velez had opportunities to become aware of the victim's identity and appearance. Further, a Colombian police agent testified that he had obtained confidential information that when Risner and his wife were walking on the beach, Risner "made signs" to hire Hernandez Pachon and his companions.

e. Risner was the beneficiary of at least five policies insuring the victim's life for a total value of approximately USD $1.73 million in the 1990s. Some, if not all, of the insurance companies investigated the victim's death and had declined to pay the proceeds to Rodriguez Calderon, prompting Risner to sue them in the United States District Court for the Northern District of Texas. *See Risner v. Amex Life Assur. Co.*, No. Civ. A No. 3-91-1646, 1993 WL 55957, at *1 (N.D. Tex. Jan. 19, 1993) (noting that Tito Risner was the designated beneficiary of several life insurance policies on the victim's life and had tried to collect against seven insurance companies). The Colombian court had before it the results of said investigation. The court found that Risner had purchased an abnormal number of policies on the victim's life, in an abnormal amount, considering that the victim worked as a nurse and was not exposed to sufficient risk to justify such coverage. The court also noted that the policies exceeded the couple's economic capacity. [On approximately January 16, 1991, plaintiff Tito Jay Risner also appears to have filed suit against the Estate of Patricia Gomez Risner in Dallas County Probate Court (Case No. PR-91-00180-1).]

f. According to the victim's sister, during the afternoon of the shooting, Risner continuously passed from one side to the other of the hotel windows, from which he could see the street and watch the shooting occur.

g. Following the murder, Colombian law enforcement interviewed Risner, who asserted that his wife's death should not be investigated. Colombian authorities who conducted the interview also reported that Risner seemed defensive and told them he did not know why they were taking his statement. [In its decision, the Colombian court listed the evidence before it, including an "Affidavit of Tito Risner."] Crediting testimony from a police agent who testified based on observing Risner and fifteen years of professional experience, the court found that Risner exhibited a strange and cunning attitude at the interview.

h. According to the victim's family, the fugitive told them to do nothing regarding the investigation because there was no point to it.

i. Risner departed Colombia abruptly on July 6, 1990, the day after the victim's burial.

j. Ramirez Montoya, who ultimately was convicted of the murder, made statements to police in an effort to prove his own innocence. For example, Ramirez Montoya stated that the victim's husband was outside of and opposite the hotel where the shooting occurred and described the clothes the victim's husband was wearing. The Colombian court found that a prior familiarity and criminal link existed between Ramirez Montoya and Risner because Risner was not on the scene when the shooting occurred, whereas Ramirez Montoya was apprehended immediately after the shooting, and Ramirez Montoya's mentioning an absent stranger to exculpate himself would have made little sense.

k. According to the victim's family, although Risner had told the victim that he was a bachelor Spaniard named Tito Jay Risner, they discovered after the victim's murder that, in fact, he was a married Colombian named Jose Tito Rodriguez Calderon. In April 1993, the victim's sister reported to Colombian law enforcement, based on information she had received from the fugitive's sister's husband, that Rodriguez Calderon had changed his name to Risner upon moving to the United States. Colombian law enforcement determined, from Colombian civil records including a photographic identity card, that Risner was born in Colombia on February 6, 1944, as Jose Tito Rodriguez Calderon (and was listed in records from 1965 as married to a woman named Fronny Avillan, to whom the Colombian court alternately refers as Fronny Saito). [The extradition request includes a copy of the fugitive's Colombian identity card, which was issued on July 30, 1965, reflecting this information. See DOJ-OIA-008 (translation at DOJ-OIA-127).] The Colombian court found, based on testimony from the victim's family, that

the victim was unaware of Risner's double identity despite being married to him and having two children with him, that Risner had deceived the victim about his identity, and that this deception indicated that Risner had mounted a plot against the victim.

l. While Risner was not physically present for the Colombian court proceedings against him, the Colombian court received and admitted two power-of-attorney forms from Tito Jay Risner.

m. The Colombian court decisions indicate that Risner's Colombian counsel did not contest that Risner is Rodriguez Calderon.

Dkt. No. 14 at 2-5 (footnotes omitted).

For his part, Risner asserts the following background in support of his request

for bail or release pending an extradition hearing:

Jay Michael Risner, a 74-year-old United States citizen with no criminal history, hereby requests bail in this extradition matter which stems from the murder of his wife nearly 30 years ago. Colombia initially sought extradition in 2000 and then apparently abandoned that effort. Now, 18 years later, Colombia has resurrected its extradition request. This new request suffers from the same infirmities as the previous request(s) in that Colombia has failed to follow extradition procedures and provide all required documents pursuant to Article 9 of the Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) ("Treaty"). (See Motion to Dismiss filed concurrently.) [At this time counsel cannot determine how many requests Colombia has made to the United States prior to 2000. ID 196-97. However, it is clear from the available records that no requests were made between 2000 and 2018.]

Special circumstances support bail, and Mr. Risner is neither a flight risk nor a danger to the community in which he has resided peacefully since 1969. Based on the combination of factors present in this matter, the setting of reasonable bail is warranted.

II. STATEMENT OF FACTS

Jose Tito Rodriguez Calderon moved to the United States ("U.S.") from Colombia in 1968 at the age of 24. In 1972, Mr. Rodriguez Calderon legally changed his last name to Risner to acquire his father's last name. [The government's assertions that Mr. Risner's legal names change was part of a plot against his wife are unfounded given the fact that the name change occurred five years before Risner met Patricia and 18 years before she was killed. (Gov. Opp. at 6)] In 1969 he settled in Dallas and in 1975 Tito Jay Risner became a naturalized U.S. citizen. (Ex. A.) In 1977 he met

Patricia Gomez Melendez, and in 1978 they married. 3 (Ex. B.) Mr. and Mrs. Risner had two children, Elizabeth was born in 1984 and Kevin was born in 1981. (Ex. C.) In 1987 Tito and Patricia each had prepared and executed their Last Will and Testament making each other the beneficiary in the event of their death.4 (Ex. D.) In and around this time, the couple also bought life insurance policies making each other the beneficiary.

In June 1990, the entire family, including Tito, Patricia, Elizabeth (age 5) and Kevin (age 9) traveled to Colombia for vacation and to visit Patricia's family. They stayed, as they always did when visiting family in Colombia, at the family condominium.

On July 4, 1990, Patricia Risner was killed in Colombia. Mr. Risner and the children were devastated. There exists no forensic or eyewitness evidence linking Mr. Risner to this horrible act. After the funeral, the family returned to Dallas where Mr. Risner began the long process of grief, recovery, and being a single parent. Mr. Risner never returned to Colombia and never again left the United States. By all accounts, he has barely left his home since the tragic loss of his wife.

Mr. Risner has lived in Dallas since 1969. He has lived in the same house for the past 18 years. He is a respected and much-loved man in the community. He recently became a grandfather. (Ex. E.)

Dkt. No. 24 at 1-2 (footnote omitted).

Risner "respectfully proposes the following special conditions of release: • Home Detention with GPS Monitoring; • Kevin Risner to act as 3rd Party custodian; and • Any other conditions the Court deems merited." *Id.* at 16.

## Legal Standards

18 U.S.C. § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for

the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184; *see also* 18 U.S.C. § 3181(a)(1) ("The provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government.").

The Federal Rules of Criminal Procedure and the Bail Reform Act do not govern extradition proceedings under 18 U.S.C. § 3184. *See* FED. R. CRIM. P. 1(a)(5)(A) ("Proceedings not governed by these rules include: (A) the extradition and rendition of a fugitive...."); *U.S. v. Ramnath*, 533 F. Supp. 2d 662, 666-67 (E.D. Tex. 2008) ("The United States Bail Reform Act of 1984 establishes substantive law and procedures regarding bail for defendants accused of committing crimes within the United States. This statute does not govern international extradition actions because they are not domestic criminal cases." (footnote omitted)); *see also* FED. R. CRIM. P. 1101(d)(3) ("These rules – except for those on privilege – do not apply to the following: ... (3)

miscellaneous proceedings such as: extradition or rendition...."); *Balzan v. U.S.*, 702 F.3d 220, 224 (5th Cir. 2012) ("The evidentiary rules governing ordinary civil and criminal trials do not control what may be admitted in an extradition hearing.").

Rather, "absent special circumstances bail should be denied pending an extradition hearing." *Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986) ("Bail should be denied in extradition proceedings absent 'special circumstances.'"). "Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case." *Id.* (internal quotation marks omitted). In this context, "[p]roof that an extradition respondent is neither a flight risk nor a danger is, without more, an insufficient ground for admission to bail pending an extradition hearing," and the person facing extradition must also establish "a special circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail." *Ramnath*, 533 F. Supp. 2d at 666.

That is so for the reasons that another judge in this circuit has explained:

> The federal statute governing extraditions is 18 U.S.C. § 3181 *et. seq.* Section 3184 of the statute provides for the issuance of an arrest warrant for extradition in cases where an extradition treaty is in place and calls for a hearing after arrest "to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. However, neither this federal extradition statute nor the Bail Reform Act provides guidance as to how a court should handle a bail request in an international extradition case once the person is arrested and detained by the United States. *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010). .... The Supreme Court of the United States has stated that "while bail should not ordinarily be granted in cases of foreign extradition," it was unwilling to hold as a general rule that the courts, "may not in any case, and whatever the special circumstances, extend the

relief." [*Wright v. Henkel*,] 190 U.S. 40, 63, 23 S. Ct. 781, 47 L. Ed. 948 (1903). Accordingly, federal courts have crafted common-law doctrines to govern in such cases, and this body of case law guides the determination as to whether [the respondent's] Motion for Release should be granted. *See, e.g.*, *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986) ("Bail should be denied in extradition proceedings absent 'special circumstances.'") (citing *Wright* [*v. Henkel*, 190 U.S. 40, 62-63 (1903)]).

This "special circumstances test" creates a presumption against bail in an international extradition case. *Id.* "The government's strong interest in denying bail stems from its need to ensure that the United States fulfills its international treaty obligations." *Garcia*, 761 F. Supp. 2d at 470 (citing *Wright*, 190 U.S. at 62, 23 S. Ct. 781, 47 L. Ed. 948). "This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable." *Id.*; *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 735 (W.D. La. 1999) ("Bail is not ordinarily available in extradition cases due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country.").

Further, this "special circumstances" determination is a discretionary decision for the trial judge, and "the list of potential special circumstances is not limited to those previously recognized in published decisions." *Gonzalez*, 52 F. Supp. 2d at 736; *Garcia*, 761 F. Supp. 2d 468 ("Put simply, the determination of whether a potential international extradite has satisfied their burden to warrant bail is necessarily made on a case-by-case basis."). The Fifth Circuit has observed that "[b]eing a tolerable bail risk is not in and of itself a 'special circumstance.'" *Russell*, 805 F.2d at 1217.

*In re Adame*, Misc. No. H-13-287, 2013 WL 1222115, at *1-*2 (S.D. Tex. Mar. 25, 2013); *accord Garcia*, 761 F. Supp. 2d at 470 ("As interpreted by the lower courts, this language [in *Wright*, 190 U.S. at 63,] established the 'special circumstances' test, which has become the standard for rendering bail decisions in international extradition cases.").

As to the required showing of special circumstances, another judge in this circuit recently observed that

> [s]pecial circumstances can arise under a variety of conditions, or by virtue of a combination of conditions that taken together create a compelling case for release on bail. Examples of such circumstances include "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Some other circumstances that have been considered are the need to consult with counsel, the age of the respondent, the availability of bail to respondent in the requesting state or state of arrest, the likelihood of respondent being found non-extraditable, and the deprivation of religious practices while incarcerated. *Ramnath*, 533 F. Supp. 2d at 666. The determination of special circumstances is left to the sound discretion of the trial judge. *Id.*; *In re Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999).

*U.S. v. Valentino*, Case No. 4:18-mj-00146, 2018 WL 2187645, at *2 (S.D. Tex. May 11, 2018). And another judge in this circuit has explained that,

> [u]nder this standard, the detainee must establish a special circumstance by clear and convincing evidence and must also show that he will not flee or pose a danger to any other person or to the community. "Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." This means that a court is not limited to previous decisions where special circumstances have been established. Rather, "the decision to grant bail and consequently, the determination of what constitutes a special circumstance, is left to the sound discretion of the trial judge."

*Matter of Extradition of Porumb*, Case No. 6:18-mj-00010, 2018 WL 814568, at *3 (W.D. La. Feb. 9, 2018) (footnotes omitted). And, as one judge observed, "[t]he special circumstances test is limited to apply where the need to grant bail is 'pressing as well as plain,' *In re Extradition of Russell*, 647 F. Supp. 1044, 1049 (S.D. Tex. 1986) (citing *In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930)) and 'when the requirements of justice are absolutely peremptory.' *Id.* (citing *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909))." *Garcia*, 761 F. Supp. 2d at 472. Or, as another judge has explained:

By definition, special circumstances are rare. While the term is semantically imprecise, a reasonably clear explication was penned by Judge Learned Hand almost a century ago. He opined that the court's limited power to grant bail in cases involving foreign extradition "should be exercised only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (emphasis added). Thus, an extradition respondent's burden is heavy, almost to the point of being unrealistic.

Nonetheless, subsequent jurisprudence suggests that certain conditions or an individual's status may meet this rigorous test. They include:

1) Length of proceedings and detention;
2) Need to consult with counsel;
3) Health of respondent;
4) Age of respondent;
5) Availability of bail to respondent in requesting state or state of arrest;
6) Likelihood of respondent being found non-extraditable;
7) Likelihood of success in action in the requesting state; and
8) Deprivation of religious practices while incarcerated.

*Ramnath*, 533 F. Supp. 2d at 666 (citations omitted).

And Risner concedes that he must also demonstrate that he is neither a flight risk nor a danger to the community. *See* Dkt. No. 24 at 2; *accord Valentino*, 2018 WL 2187645, at *2 ("There is a presumption against bail in extradition cases. *Wright v. Henkel*, 190 U.S. 40, 63 (1903); *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986). The rationale is that extradition cases involve an overriding national interest in complying with treaty obligations which would be stymied if the defendant absconded while released on bond pending extradition. *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990); *In re Extradition of Garcia*, 761 F. Supp. 2d at 475 ('[O]ur nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3)

preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments.'). Because of that, the burden rests with the extraditee to show that he is neither a flight risk nor a danger to the community, and that special circumstances warrant pre-hearing release. *Russell*, 805 F.2d at 1217; *Ramnath*, 533 F. Supp. 2d at 665.").

This is a showing as to which courts in this circuit have imposed a burden of proof by clear and convincing evidence, *see Ramnath*, 533 F. Supp. 2d at 665 ("The burden rests with extradition respondents to show by clear and convincing evidence that they are neither a risk of flight nor a danger to any person or the community." (footnote omitted)). As the government notes, *see* Dkt. No. 14 at 8 n.7, one judge in this circuit has observed that

> [t]here is general agreement that the potential extraditee bears the burden of establishing a bond is warranted. However, there is disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy, which adds to the uncertainty of making a bond determination. For example, many courts simply do not comment on the exact evidentiary standard the potential extraditee must satisfy. *See e.g.*, *Russell*, 805 F.2d at 1215[.] Other courts require the person subject to international extradition to overcome the presumption against bail by presenting clear and convincing evidence that bail is warranted. Finally, there is a negligible minority of courts that have adopted a preponderance of the evidence standard.
>
> In adopting the clear and convincing evidence standard, which many district courts have utilized, the *Nacif-Borge* court looked to the provisions of the Bail Reform Act ("Act") and the Federal Rules of Criminal Procedure for guidance in making bail determinations in the foreign extradition context. 829 F. Supp. at 1215. That court ultimately determined that there were analogous situations that existed under the Act concerning: (1) bail for persons pending sentencing or notice of appeal, (2) bail for persons convicted of certain serious offenses, and (3) bail for persons in custody pending a revocation hearing for alleged violations of conditions of probation or supervised release. *Id.* More

specifically, the *Nacif-Borge* court believed that these three situations resembled the extradition situation in the lack of presumption for bail, and the need for the person seeking release to establish an absence of flight risk and danger by the heightened standard. *Id.* While this Court is unwilling to declare that a potential extraditee's circumstances are analogous to that of a domestic criminal who has been convicted of a crime, the Court is persuaded, like the *Nacif-Borge* court, that the Bail Reform Act is, at least, informative to determining whether a heightened burden applies.

Moreover, there are other circumstances relevant to an extradition matter that support requiring a potential extraditee to meet a heightened burden in a request for bail. As explained above, our nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments. *See Wright*, 190 U.S. at 62, 23 S. Ct. 781; *Ramnath*, 533 F. Supp. 2d at 665. It could be argued that a person who has committed a crime in a foreign jurisdiction, and subsequently left the jurisdiction, could be considered a flight risk by definition. Further, it seems intuitive to this Court that a potential extraditee is a greater risk of flight (than someone accused in a domestic criminal case) because there is less, if any, familiarity with the foreign country's laws and/or legal processes.

*In re Extradition of Garcia*, 761 F. Supp. 2d 468, 474-76 (S.D. Tex. 2010) (citations and footnotes omitted).

This Court is likewise persuaded that adopting the clear and convincing evidence standard is appropriate but, as explained below, would reach the same determination in this case on the United States's Motion for Detention [Dkt. No. 5] and Risner's Motion for Bail [Dkt. No. 24] even if a preponderance of the evidence standard applied.

## Analysis

The United States contends that "[t]he Court should detain Risner without

-14-

bond," where "[a] fugitive charged with crimes in another country is already by definition in flight," and, "[h]ere, further support for the presumption includes the fugitive's (1) dual nationality; (2) demonstrated use of aliases; (3) abrupt departure from Colombia a mere day after his wife's burial, knowing that law enforcement authorities had just interviewed him; (4) incentive to evade the twenty-year sentence that awaits him in Colombia, particularly given the risk, at his current age of seventy-four, that he could spend the rest of his life in prison; and (5) Risner's financial assets, which appear to include (a) life insurance proceeds that he or his children possess (the Colombian court valued the life insurance policies that Risner held on the victim's life at approximately USD $1.73 million back in 1994); and (b) co-ownership of real property with assessed value of approximately USD $350,000." Dkt. No. 16 at 11-12. According to the United States, "Risner has high incentive to flee or disappear, given his fear of extradition and incarceration; therefore, his flight or disappearance is a reasonable assumption." *Id.* at 12. And, the United States asserts, "[c]onsidering his conviction for aggravated homicide, Risner also poses a danger to the community. Specifically, the Colombian court decisions indicate that Risner, with a financial motive, masterminded his wife's murder – that is, the murder of his children's mother – which was choreographed to occur while the victim's sister and mother watched in horror." *Id.*

The United States further asserts that, "[b]ecause Risner poses a risk of flight and a danger to the community, the Court need go no further to deny any forthcoming application for bail. However, even if the Court were satisfied that the fugitive posed

no flight risk or danger to the community, the government is unaware of any 'special circumstances' that would justify bail in this case." *Id.* at 12-13. And, the United States asserts, "as the cases make clear, [t]he rationale for not ordinarily granting bail in extradition cases is that extradition cases involve an overriding national interest in complying with treaty obligations"; "[a]llowing bail in any amount, under any conditions, would not guarantee Risner's presence in court and would invite the possibility of embarrassing the United States in conducting its foreign affairs"; and, "[w]hile forfeiture of bail in domestic criminal cases is designed to compensate, at least in part, the court that seeks the accused's presence, forfeiture of bail in international extradition cases due to the fugitive's failure to appear would leave the requesting country (Colombia) without neither remedy nor compensation." *Id.* at 13 (footnotes and internal quotation marks omitted).

In support of his Motion for Bail, Risner asserts that "[t]he following factors present in this case, have been found, either individually or collectively, to qualify as special circumstances: (1) Substantial likelihood of success at the extradition hearing. (2) Lack of any diplomatic necessity for denying bail based on substantial delay in seeking extradition. (3) Lengthy delay in extradition proceedings. (4) Strong support within the community. (5) Health issues." Dkt. No. 24 at 4-5 (citations omitted). He contends that, "[i]n this case, the setting of a reasonable bail is warranted because special circumstances exist, and Mr. Risner is neither a risk of flight or a danger to the community." *Id.* at 5.

The United States responds that

Risner apparently has heeded his counsel's published advice that the "best way to secure release pending the extradition proceedings is to throw in the proverbial kitchen sink." Nina Marino & Nicole Eiland, *Defending International Extradition*, 22 Crim. Just. 4, 7 (Winter 2008). With that strategy, Risner attempts to convince the Court that he is a model citizen, that he will never flee the jurisdiction, and that his circumstances are special in many ways. On the contrary – bail in any form would be inappropriate for Risner because he cannot meet his burden to overcome the strong presumption against bail in international extradition proceedings. He poses a high flight risk, he is a danger to the community, and he does not present special circumstances to warrant the extraordinary privilege of bail in the extradition context. Each of these defects is, alone, fatal to his bail application.

Dkt. No. 27 at 2.

Risner replies that "[s]pecial circumstances must be considered in the aggregate"; that he "has demonstrated special circumstances including high probability of success on the merits, lack of diplomatic necessity for denying bail, lengthy delay in the proceedings, strong community support, and health issues"; that "[t]he circumstances taken cumulatively create special circumstances justifying bail"; that, "[l]ikewise, the government has failed to present any current evidence less than 20 years old that would support the position that Mr. Risner is either a flight risk or a danger to the community"; and that the Court should "grant Mr. Risner's release on bond pending resolution of this case." Dkt. No. 28 at 6.

The Court will turn first to Risner's asserted special circumstances, where, although "[c]ourts differ as to whether analysis properly begins with 'risk of flight and danger' or 'special circumstances,'" "[s]ince both showings are prerequisites, a court logically can address either prong first." *Ramnath*, 533 F. Supp. 2d at 665 n.3 (citations omitted).

-17-

I.    <u>Substantial likelihood of success in the extradition proceedings.</u>

Risner contends that he is likely to succeed on his Motion to Dismiss and that, "[b]ecause the government will be unable to establish probable cause that Mr. Risner murdered his wife 28 years ago, there exists a substantial likelihood of success in the extradition proceedings," which "is a special circumstance favoring the setting of a reasonable bail." Dkt. No. 24 at 8-9. According to Risner,

> [i]n its Opposition to Bail the government states that Colombia has met the "conditions of the treaty." (Gov. Opp. at 7.) This is not accurate – Colombia has failed to comply with Article 9 of the Treaty. (See concurrently filed Motion to Dismiss.)
>
> Article 6 of the Treaty states, "[e]xtradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time to the laws of the Requesting State." Sentencing was imposed on Mr. Risner in 1994. The appeals process in Colombia concluded in 1998 – 20 years ago. Because Colombia has failed to comply with Article 9, it cannot argue that the statute of limitations has not run on the enforcement of the penalty. The failure to comply with Article 9 creates the substantial likelihood that Mr. Risner will prevail in these proceedings.
>
> Extradition requires a showing of probable cause. Determining if there is probable cause that the relator committed the crime charged "requires a fact-specific analysis." *Ramnath*, 533 F. Supp. 2d at 676. The Letter of Submittal from William Clark, Secretary of State to President Ronald Reagan, presented to the U.S. Senate states: "Article 9 limits extradition to cases where there is sufficient evidence, according to the laws of the requested State, to bring the person sought to trial had the offense been committed in the requested State or where the person sought is shown to be the person convicted by the courts of the requesting State."
>
> The Letter of Submittal to the U.S. Senate demonstrates the Executive Branch's intention to limit extradition solely to cases where there is sufficient evidence according to United States jurisprudence as the requested State. "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'" *Abbott v. Abbott*, 5601 U.S. 1, 15 (2010) (quoting *Sumitomo Shoji America Inc., v. Avagliano*, 457 U.S. 176, 184084 (1982)). The complaint filed November 16, 2018, and the underlying extradition documents (ID 152) list seven

items of evidence of guilt. Individually and collectively these items do not establish probable cause.

(1) <u>Risner's attitude when he was interviewed by law enforcement in Colombia</u>

Mr. Risner had just lost his wife under tragic circumstances. The fact that he "did not know why" the SIJIN wanted to interview him is hardly surprising since he was neither with his wife when she was killed, nor did he witness the crime.

(2) <u>The fact that Risner left the country the day after the funeral</u>

After the funeral of his wife Mr. Risner took his children, ages 5 and 9, back to their home in Dallas. This decision, given the children's lack of any meaningful relationship with their Colombian family members, seemed in their best interest.

(3) <u>The statement of Raul Ramirez Montoya</u>

Montoya's statement found at ID 154 is as follows: "[I]t seems that the husband of the lady was at that time with another lady. The lady was accompanied by another lady, and at the door of the hotel she met a man with a green t-shirt and white shorts…I believe that the man is the husband of the lady." (See also ID 176, 177, 182) The "man with a green t-shirt and white shorts" is unidentified but he is described as being at the door of the hotel. The government states: "According to the victim's sister…Risner continuously passed from one side to the other of the hotel windows, from which he could see the street and watch the shooting." (Gov. Opp. at 3.) The statements conflict. Risner could not be at the window and at the door at the same time.

(4) <u>The life insurance policies whose beneficiary was Rodriguez Calderon</u>

The insurance policies were not purchased without Patricia's knowledge, and while insurance proceeds may constitute a motive, probable cause still requires evidence of guilt.

(5) <u>Risner's links with Jairo Hernandez Pachon, a participant in the homicide</u>

According to Pinzon's wife, "Pachon's is the son of a step brother of theirs, that Jose Tito Rodriguez Calderon is the uncle of Hernandez Pachon." (ID 157.) This extended family relationship is at best unclear.

(6) <u>The false identity of Risner</u>

In 1972 Mr. Risner changed his name legally from Rodriguez Calderon to Risner. Five years later, in 1977, he met Patricia Gomez Melendez. Because Mr. Risner legally changed his name five years before he met Patricia, his Certificate of Naturalization dated 1975 bears that changed name, and because the marriage certificate includes his former surname of Calderon, Mr. Risner could not have deceived the victim about his identity…to mount a plot against the victim. (Gov. Opp. At 6;

see Exs. A, B.)

    (7) <u>Risner's previous marriage to Fronny Saito</u>

    Risner was never married to Fronny Saito which is why there is no marriage certificate. [The 1965 identification card, while authentic, contains incorrect information. See attached report of John Brown and Associates. (Ex. F.)]

    Accordingly, the lack of probable cause based on U.S. jurisprudence that Tito Jay Risner murdered his wife creates the substantial likelihood that Mr. Risner will prevail in these proceedings.

    Also related to the lack of probable cause is the inconsistent location of where the murder took place. The government's opposition states that "the Risner's arrived at the Hotel Bellavista in Cartegena" on July 1, 1990 and that the co-defendants arrived on the same day. (Gov. Opp. 2; see ID 160, 170, 177, 182.) The government's pleading and Colombian supporting documents state that the reason Mr. Risner stayed at this hotel was so that the murderers could "become aware of the victim's identify and appearance." (Gov. Opp. at 3; see ID 161, 177, 193.) The shooting is described as occurring in the street in front of the hotel and Mr. Risner is described as having watched from the hotel window. [This fact, for the first time placing Mr. Risner at the scene of the crime, does not come out until the Colombia supreme court hears the case some eight years later.] (Gov. Opp. 4; ID 186.) However, the extradition documents also say that the crime occurred in the "El Laguito sector of the city." (See ID 149, 167, 181). The El Laguito sector of the city is 6.3 kilometers from the Hotel Bellavista. (Ex. G.) This significant inconsistency supports a lack of probable cause finding and creates the substantial likelihood that Mr. Risner will prevail in these proceedings.

Dkt. No. 24 at 5-8 (footnotes omitted).

The United States counters that "Risner's purported likelihood of success in defeating extradition is not a special circumstance warranting bail":

    Risner asserts that the Court should grant him bail because of the "special circumstance" that he is likely to defeat extradition. Specifically, he claims that the Colombian limitations period has lapsed and that the government will fail to establish probable cause at his extradition hearing. (*See* ECF No. 24 at 11.) As discussed below, however, most courts hold that arguments regarding the substantive merits of an extradition request are proper subjects of the extradition hearing, not the bail hearing. Moreover, to the extent courts have entertained such claims at the bail stage, most have required the fugitive to establish a "high

probability" of success on the merits, which Risner fails to do because the Colombian case is timely, probable cause exists, and even at the extradition hearing, Risner will not be permitted to introduce evidence that contradicts Colombia's evidence or challenges its witnesses' credibility.

1. Claims Regarding the Substantive Merits of an Extradition Request Are Reserved for the Extradition Hearing

Contrary to Risner's assertion, most courts hold that arguments regarding the substantive merits of an extradition request are properly raised at the fugitive's extradition hearing and are immaterial to his prior bail determination. *See United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 61 (D. Mass. 2010); *In re Sacirbegovic*, 280 F. Supp. 2d 81, 88 (S.D.N.Y. 2003) (stating that probability of success against extradition is a subject reserved for the extradition hearing); *In the Matter of Extradition of Sidali*, 868 F. Supp. 656, 658-59 (D.N.J. 1994) (stating that probability of success against extradition "relate[s] to whether [the fugitive] should be extradited[,] not whether he should be released on bail"). Accordingly, the Court should not entertain Risner's substantive challenges to the merits of the extradition request – let alone his protestations of innocence – at this preliminary stage. *See* 18 U.S.C. § 3184 (providing that at the extradition hearing, the court will determine whether the evidence is "sufficient to sustain the charge under the provisions of the proper treaty or convention").

Further, to the extent that outlier courts have considered the likelihood that a fugitive will succeed in defeating extradition at the bail stage of a proceeding, they mostly have required the fugitive to establish a "high" probability of success, not just a substantial likelihood. *See, e.g.*, *Kin-Hong v. United States*, 83 F.3d 523, 524-25 (1st Cir. 1996) (noting that "courts have held that [special] circumstances may ... include the raising of substantial claims against extradition on which the [fugitive] has a high probability of success," but reversing order granting bail where, "[w]hile arguably [the fugitive] may ultimately prevail in his challenges to his extradition, the record does not establish probability of success one way or another) (emphasis added); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *In re Extradition of Garcia*, 615 F. Supp. 2d at 171; *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993) (finding no "high" probability of success)[.] Risner fails to establish a *high likelihood* of success in defeating extradition.

Rather, Risner predicts a substantial likelihood that at the extradition hearing, the Court will be unable to find probable cause to believe that he committed the crime for which Colombia seeks his extradition. In support of this prediction, Risner offers an incomplete, partially inaccurate rendition of some of the evidence against him,

protests his innocence, attacks witness credibility, and attempts to challenge the veracity of Colombian government records concerning a previous marriage by offering contradictory evidence. (*See* ECF No. 24 at 12–14.)

Even at the extradition hearing, however, a fugitive's opportunity to challenge the evidence against him is very circumscribed, given the nature and limited purpose of the extradition hearing under 18 U.S.C. § 3184 and the importance of the United States' fulfilling its treaty obligations. At the extradition hearing, Risner will not be able to introduce evidence that contradicts the evidence the government submits on behalf of Colombia, but may only introduce evidence that explains the submitted evidence. *See Charlton v. Kelly*, 229 U.S. 447, 457-58 (1913); *Ordinola v. Hackman*, 478 F. 3d 588, 608-09 (4th Cir.), *cert. denied*, 128 S. Ct. 373 (2007) ("[T]he alleged fugitive's ability to challenge the government's evidence or to submit evidence of his own at the extradition hearing is also significantly limited. For example, the fugitive has no right to introduce 'contradictory evidence' that conflicts with the government's probable cause evidence.") (citation omitted). Nor will he be able to introduce evidence in an effort to impeach the credibility of Colombia's witnesses. *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993). Such matters, which require factual and credibility determinations, are reserved for the country seeking extradition.

Dkt. No. 27 at 10-12 (footnotes omitted). And, according to the United States, "in any event, Risner's claim regarding the colombian limitations period is meritless":

Contrary to his assertion that the Colombian limitations period has lapsed, the Colombian government has submitted information advising that under Colombian law, the limitations period is interrupted "if the person convicted is arrested by reason of the sentence." *See* Exhibit D hereto. Accordingly, Risner's November 16, 2018, arrest in the United States interrupted the twenty-year Colombian limitations period, which otherwise would have expired on November 23, 2018 (twenty years after the Supreme Court of Justice, Criminal Cassation Division, affirmed his conviction on November 23, 1998).

In extradition proceedings, U.S. courts defer to the foreign nation with respect to that nation's interpretation of its own law. *See, e.g.*, *In re Extradition of Jimenez*, No. 14-2319-SAG, 2014 WL 7239941, at *1-2 (D. Md. Dec. 16, 2014) (rejecting claim that extradition to Costa Rica was not permitted because statute of limitations lapsed for sentencing, where Costa Rica provided documents explaining that statute of limitations was tolled) (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2d Cir 1976)

("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another nation.")); *Skaftouros v. United States*, 667 F.3d 144, 156, 160 (2d Cir. 2011) ("Any arguments regarding the demanding country's compliance with its own laws [ ] are properly reserved for the courts of that country."). This principle is supported by general notions of international comity and respect for foreign nations' sovereignty. *See Koskotas v. Roche*, 931 F.2d 169, 174 (1st Cir. 1991); *Ahmad v. Wigen*, 910 F.2d 1063, 1067-68 (2d Cir. 1990); *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Braz.*, 466 F. Supp. 2d 1020, 1028 (N.D. Ill. 2006) ("American courts should treat foreign law the way American courts want foreign courts to treat American law: avoid determining foreign law whenever possible."). It is further supported by the prudential policy of avoiding the high risk that a U.S. court might erroneously interpret the law of a foreign country. *See Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009); *In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980), *cert. denied*, 451 U.S. 938 (1981) ("We often have difficulty discerning the laws of neighboring States, which operate under the same legal system as we do; the chance of error is much greater when we try to construe the law of a country whose legal system is much different from our own. The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters."). Risner's argument about the Colombian limitations period controverts the Colombian government's interpretation of its own law and therefore fails to establish even a possibility of success on the merits, let alone a high probability comprising a special circumstance to justify granting bail.

*Id.* at 13 & n.9 (footnote omitted). The United States asserts that, "[f]or all these reasons, Risner's claims about how he will fare on the merits at the extradition hearing are not a special circumstance warranting bail." *Id.* at 14.

Risner replies that "a high probability of success on the merits exists due to Colombia's ongoing failure to comply with the Treaty":

In this extradition request, Colombia has continuously failed to follow extradition procedures and provide all required documents pursuant to Article 9 of the Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) ("Treaty"). Colombia is in violation of the terms of the Treaty, therefore there is a high probability of success on the merits.

-23-

Courts have held that "[special] circumstances include the raising of substantial claims upon which the [relator] has a high probability of success…." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Evidentiary factors relevant to the court's determination include "[r]equired documents presented in accordance with United States law, translated and duly authenticated by a United States consul[.]" *In re Extradition of Bonilla*, No. 1:13-MJ-62, 2014 WL 934903, at *4 (E.D. Tex. Mar. 4, 2014). Article 9 governs "Extradition Procedures and Required Documents." Treaty at Art. 9. The Government of Colombia is in violation of the treaty, giving Mr. Risner a high probability of success on the merits.

A. Colombia Still Fails to Provide All Documents

Article 9 requires production of the following documents:

Section (2)(c): The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested.

Section (2)(d): The texts of the laws describing the punishment for the offense.

Section (2)(e): The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense.

Section (4): Statement showing to what extent the sentence has not been carried out.

Treaty at Art. 9.

Exhibit A to the Supplement to Extradition Request (Dkt. 26) provides an enlarged version of the same Spanish language illegible documents originally produced at ID 25-39 (the Diario Oficial), which still have not been translated. Colombia's provision of a translation of Article 323 (Homicide), Article 324 subsections 1 and 4 (Homicide Sentencing Enhancement), and Article 87 (Term for the Prescription of Punishment) still do not satisfy Article 9 of the Treaty.

Colombia only provided subsections 1 and 4 of Article 324, defining the aggravated circumstances of the crime of homicide. However, Criminal Court Six states that "Jose Tito Rodriquez Calderon should be punished for the crime of aggravated homicide, since the third and fourth causes of Section 324 of the Criminal Code are satisfied, that is, the deed was committed against his spouse, and in the interest of gain." ID 163 (emphasis added). Columbia has failed to provide the third cause of Section 324. Without providing the entire code section, Colombia has failed to meet its requirement under section (2)(c).

Additionally, throughout the three court opinions, references are made to 16 articles from the Colombian Criminal Procedure Code. [Criminal Procedure Code Articles 23 (ID 159, 160), 24 (ID 159), 61 (ID 163), 106 (ID 164), 107 (ID 164), 247 (ID 151, 162, 169), 253 (ID 151), 263

(ID 151), 300 (ID 150, 152, 183), 301 (ID 152), 302 (ID 152), 334 (ID 164), 346 (ID 170), 441 (ID 147), 501 (ID 165), 508 (ID 163).] None on these code sections have been provided. This includes Article 247, which defines the "certainty of responsibly" required for conviction, which should be considered an "essential element…of the offense" required to be produced under the Treaty. ID 151, 162 ("all the requirements for conviction").

Mr. Risner has a high probability of success on the merits given that Colombia has failed to provide these documents in accordance with the Treaty. This is a special circumstance that warrants bail.

B. Colombia Has Provided Conflicting Translations of the Same Code Sections

Colombia has provided conflicting translations of code sections for Article 323 (Homicide) and Article 324 (Homicide Sentencing Enhancement). In Exhibit D to Government's Response in Opposition to Motion for Bail (Dkt. 27) the articles are translated as follows [The email, that is part of Ex. D, has not been translated.]:

Article 323: "He who kills another will be liable to imprisonment from 25 to 40 years."

Article 324: "Punishment will be for 25 to 40 years imprisonment if the conduct described in the preceding Article is committed…."

Gov. Resp. in Opp., Ex. D at ID 505 (emphasis added).

However, in Ex. A to Government's Supplement to Extradition Request (Dkt. 26) the same articles are translated differently:

Article 323: "He who kills another will be liable to imprisonment from 10 to 15 years."

Article 324: "Punishment will be for 16 to 30 years imprisonment if the conduct described in the preceding Article is committed…."

Supp. to Extradition Request, Ex. A at ID 412 (emphasis added).

Colombia's failure to provide consistent code sections and translations describing "the essential elements and the designation of the offense for which extradition is requested" as required by the Treaty gives Mr. Risner a high probability of success – a special circumstance justifying the setting of bail.

Dkt. No. 28 at 1-4 (footnotes and emphasis omitted).

Risner further asserts that

[t]he fact that Colombia convicted Mr. Risner does not alter the analysis because the conviction was in absentia. When a conviction is obtained in absentia, courts have treated the extradition request as if it involved a pending charge, therefore still requiring sufficient and independent evidence to justify a reasonable belief that the relator committed the

crime. *See, e.g.*, *Germany v. United States*, 2007 U.S. Dist. LEXIS 65676, at *20-21 (E.D.N.Y. Sep. 5, 2007) ("Where a defendant was convicted in absentia, the conviction is merely a charge and an independent determination of probable cause in order to extradite must be made"); *Argento v. Horn*, 241 F.2d 258, 259 n.1 (6th Cir. 1957); *Gallina v. Fraser*, 278 F.2d 77, 78-9 (2nd Cir. 1960). Presence of counsel alone at a trial is insufficient to give an in absentia conviction conclusive effect for a probable cause determination. *See In re Extradition of Ernst*, 1998 U.S. Dist. LEXIS 10523, at *21-4 (S.D.N.Y. July 14, 1998); *see also United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (finding that relators were convicted in absentia despite having been represented by counsel).

Dkt. No. 24 at 8.

Taking the last point up first, another judge in this district recently considered

the state of the law on this issue:

> In this case, the parties disagree on the significance of the conviction by the Dutch court. The United States Government argues it is de facto proof of probable cause to support the charges. Valentino contends that when, as here, the conviction is obtained in absentia, it should be considered nothing more than a "mere charge" so that probable cause must still be established independently of the conviction. The courts in this Circuit do not appear to have directly addressed this issue. *See Matter of Extradition of Porumb*, No. 6:18-MJ-00010, 2018 WL 814568, at *4 (W.D. La. Feb. 9, 2018) ("The Government counters that no probable cause determination is required because he was already convicted albeit *in absentia. Assuming without deciding* the Government's position as to the second requirement is correct....") (emphasis added). Courts in other circuits have reached conflicting conclusions. *Compare United States v. Bogue*, No. 98-CRIM.A.-572-M, 1998 WL 966070, at *2 (E.D. Pa. Oct. 13, 1998) ("[A] conviction, although obtained in absentia, provides sufficient evidence of criminality to satisfy the probable cause requirements of 18 U.S.C. § 3184.") *with In Matter of Extradition of Ernst*, No. 97 CRIM.MISC.1 PG.22, 1998 WL 395267, at *7 (S.D.N.Y. July 14, 1998) ("[W]here, as in this case, the conviction is the result of a trial in absentia, the conviction is regarded merely as a charge, requiring independent proof of probable cause.").
>
> Convictions in absentia can generally be organized into three categories: 1) cases in which the accused was present for some or all of the proceeding leading to the conviction, *U.S. ex rel. Bloomfield v.*

-26-

*Gengler*, 507 F.2d 925 (2d Cir. 1974) (present for trial at which he was acquitted, not present for appeal that overturned acquittal); *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320 (N.D. Ill. May 14, 1999) (present for majority of trial before fleeing); 2) cases in which the accused was not present but was fully represented by counsel, *Gallina v. Fraser*, 177 F. Supp. 856, 859 (D. Conn. 1959), *aff'd*, 278 F.2d 77 (2d Cir. 1960); and 3) cases in which the accused was entirely unrepresented. *In re Ribaudo*, No. 00 CRIM.MISC.1PG.KN, 2004 WL 213021 (S.D.N.Y. Feb. 3, 2004). Although not universal, the overriding principal in cases involving convictions in absentia appears to be this: when there is credible evidence supporting the conviction, either because the accused defended himself at trial, had evidence presented on his behalf at trial, or the requesting state has provided evidence supporting the conviction in its request for extradition, a conviction in absentia can be evidence of probable cause. When those indicators are absent, it is reasonable for a court to consider the sufficiency of the evidence when a conviction is obtained in absentia.

*Valentino*, 2018 WL 2187645, at *4-*5.

And, as to the matter of probable cause in the context of a request for release pending an extradition hearing, another judge has observed in the context of an argument for pre-hearing release in that case that "[t]he court will make a formal probable cause determination at the extradition hearing itself" but "Dr. Ramnath's 'special circumstance' argument premised on likelihood of success at the extradition hearing requires the court to make an educated guess at this stage." *Ramnath*, 533 F. Supp. 2d at 679; *see generally* Dkt. No. 6 at 8-9 ("An extradition certification is in order where: (1) The judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crime for which extradition is requested is covered by the applicable treaty; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. 18 U.S.C. § 3184; *see Fernandez*, 268 U.S.

at 312; *Ordinola*, 478 F.3d at 608 ('In practice, this is generally... a limited hearing to determine whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge.').").

II.  Lack of any diplomatic necessity for denying bail based on substantial delay in <u>seeking extradition.</u>

Risner also contends that "[t]he lack of any diplomatic necessity for denying bail based on substantial delay in seeking justice is a special circumstance favoring the setting of a reasonable bail." Dkt. No. 24 at 9. According to his Motion for Bail,

> Colombia's 20 year delay in seeking Mr. Risner's extradition is a factor that strongly supports the setting of reasonable bail. "Courts have found special circumstances when 'there is a lack of any diplomatic necessity for denying bail.'" *Castaneda-Castillo*, 739 F. Supp. 2d at 56 quoting [*In re Extradition of Chapman*, 459 F. Supp. 2d 1024 (D. Haw. 2006)]. In *Chapman*, the fact that Mexico waited three years before bringing extradition proceedings and therefore had "not made prosecution of this offense a priority" was one of three special circumstances warranting release on bail. "[I]t is appropriate to evaluate the priority given to the case by the extraditing country." *Castaneda-Castillo*, 739 F. Supp. 2d at 58; *see also In re Kapoor*, [No. 11-M-456 (RML),] 2011 U.S. Dist. LEXIS 65054, at *7-8 [(E.D.N.Y. June 7, 2011)]; *see also United States v. Liu Kin Hong*, 83 F.3d 523, 524 (1st Cir. 1996) ("Special circumstances' may include a delayed extradition hearing.").
>
> The crime was committed in 1990, the conviction was in 1994, and the appeals process concluded in 1998. An extradition request was made and abandoned in 2000 (ID 196-97), and not renewed until 2018. In 18 years, Colombia has not made this extradition a priority. There is a lack of diplomatic necessity to detain Mr. Risner given the substantial and unexplained delays in seeking extradition. *See Castaneda-Castillo*, 739 F. Supp. 2d at 57 (the fact that "the Peruvian government waited three years before requesting extradition, and the United States government approximately two years before requesting the provisional arrest warrant" "weigh[ed] very heavily in favor of release").

Dkt. No. 24 at 9.

The United States counters that "[t]he 'delay' claims are neither accurate nor a

'special circumstance'":

> Risner asserts that because he has benefited from years of "delay" (that is, undeserved freedom) since his Colombian homicide conviction, this Court should continue the trend. But Risner's beliefs about the "delay" in this matter, which he asserts without substantiation as though they were facts, are incorrect. His claim that Colombia "abandoned" and then "renewed" its extradition request is inaccurate. Colombia's Supreme Court of Justice, Criminal Cassation Division, affirmed Risner's conviction on November 23, 1998, and Colombia requested his extradition in 2000. Colombia did not abandon or withdraw the extradition request. Rather, the United States inadvertently delayed in processing it due to a clerical error. In response to questions from the United States, Colombia supplemented the extradition request in 2018. Thus Risner's reference to Colombia's "20 year delay in seeking [his] extradition" is of his own imagination (ECF No. 24 at 15) and neither impacts the United States' treaty obligations to Colombia nor reflects on the diplomatic necessity of detaining him. The case law Risner cites concerning "lack of diplomatic necessity" is inapposite where, as here, Colombia neither delayed in seeking extradition nor abandoned its extradition request.

> Even if Colombia had delayed, delay is not a "get out of jail free" card. *See, e.g.*, *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 604 (W.D. Va. 2013) (finding that twenty-year delay in Bosnia's pursuing extradition was not a special circumstance warranting bail); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 827, 830 (11th Cir. 1993) (finding that seventeen-year delay in seeking extradition was not a special circumstance); *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92, 98-99 (D. Mass. 2015) (finding that seven-year delay in seeking extradition not a special circumstance warranting bail); *United States v. De Lorea*, No. 06-98, 2006 WL 1518981, at *3-4 (N.D. Ind. May 31, 2006) (finding that ten-to-eleven-year delay between charges and extradition request was not a special circumstance justifying release); *Sidali*, 868 F. Supp. at 659 (denying bail for fugitive wanted for rape, "despite the fact that the crime occurred almost twenty five years ago and despite the fact that [fugitive] has apparently led a crime free existence while in the United States"); *In re Johnson*, 2012 WL 3929811, at *4-5 (W.D. Pa. Sept. 7, 2012) (finding that delay between offense and extradition request was not a special circumstance, where approximately nine years passed between foreign arrest warrant issuance and extradition bail hearing). For these reasons, Risner's delay-related claims are not a special circumstance warranting bail.

Dkt. No. 27 at 14-15.

Risner replies that

> Colombia's delay in seeking Mr. Risner's extradition coupled with the United States' substantial delay in prosecuting the extradition is a factor that strongly supports the setting of reasonable bail because it demonstrates a lack of any diplomatic necessity for denying bail. *See United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 56 (D. Mass. 2010). The fact that the United States is to blame for the substantial delay in prosecuting this extradition does not change the analysis. (*See* Gov. Resp. in Opp. at 14.)
>
> Here, Colombia waited two years before seeking extradition, then, "due to a clerical error," the matter was not pursued by the United States for 18 years. (Gov. Resp. in Opp. at 14.) Because in those 18 years Colombia did not pursue the status of the extradition in the United States, Colombia did not make this extradition a priority. *See In re Extradition of Chapman*, 459 F. Supp. 2d 1024 (D. Haw. 2006). The government utterly fails to address this point.
>
> The majority of the cases cited by the government to its point that a delay is not a special circumstance are distinguishable. In *Nezirovic v. Holt*, the court found that the 20-year delay did not constitute a special circumstance given the fact that relator committed war crimes and did not contest that there was probable cause that he committed the crimes. 990 F. Supp. 2d 594, 604 (W.D. Va. 2013). In *Martin v. Warden*, the delay in seeking extradition was due to the execution of a new treaty which made the offense charged now an extraditable offense. 993 F.2d 824, 827 (11th Cir. 1993). In *Matter of Extradition of Drumm*, the seven-year delay was due to an active investigation of the crime, which was delayed by the relator's move to the United States. 150 F. Supp. 3d 92, 98-99 (D. Mass. 2015). In *Sidali*, the 25-year delay was substantially outweighed by the clear and convincing evidence of risk of flight. 868 F. Supp. 1342 (D.N.J. 1995).
>
> Because both Colombia and the United States delayed 20 years to prosecute this extradition, there is a lack of any diplomatic necessity for denying bail.

Dkt. No. 28 at 4-5.

III.    Lengthy delay in extradition proceedings.

Risner also argues that "[t]he lengthy delay in these extradition proceedings is a special circumstance favoring the setting of a reasonable bail," where

[c]ourts have also found that the length of time an extradition case will be pending can be a special circumstance. *See, e.g., Kirby*, 106 F.3d at 863 ("'Unusual delay in the appeals process' can be a 'special circumstance' that will justify bail."); *In re Santos*, 473 F. Supp. 2d at 1036 ("Courts have held that delay in the extradition proceeding is a circumstance, either alone or in combination with other factors, which may justify granting bail."); *Morales*, 906 F. Supp. at 1375 (holding that the seven months petitioner had already been in custody "together with the additional time the Court anticipates will be required before this matter is resolved" was a special circumstance).

Here, it is likely that proceedings in this case will be prolonged. As discussed above, Colombia is not in compliance with Article 9 of the Treaty and it is unknown if or when Colombia will become compliant through diplomatic channels. Mr. Risner should not be forced to remain in custody in the interim.

Dkt. No. 24 at 9-10.

Insofar as Risner points to delay that he anticipates will be caused by Colombia or the United States in this proceeding, and not by Risner himself, that may distinguish his reliance on this possible special circumstance from another court's rejection of such an argument:

Dr. Ramnath suggests that there likely will be an extensive delay of the extradition hearing and subsequent appeal. If this be true, it can be a special circumstance warranting release pending the extradition hearing.

Dr. Ramnath argues that there will be an extended delay for the extradition hearing because she will need additional time to research the issues prior to the hearing. Dr. Ramnath also foresees that if bail is granted, the government will likely appeal or file an immigration detainer, each of which would also cause delay. Finally, she foresees an appeal of the extradition decision itself.

The court is unconvinced that there will be excessive delay. The government states that it is ready for the extradition hearing now. While a reasonable time for Dr. Ramnath to prepare for the hearing is due, such preparation should not require a huge amount of time, given the abbreviated nature of the hearing. An extradition proceeding is not a plenary trial; it is to determine only whether the respondent is extraditable. *Montemayor Seguy*, 329 F. Supp. 2d at 888. The nature of

evidence that a respondent may introduce is quite limited, and general discovery regarding merits of the prosecution is unavailable during the extradition phase. *Id.* Defensive investigation and defensive evidence must await proceedings in the underlying case in the United Kingdom. *See id.*

Second, only unusual delay qualifies as a special circumstance warranting bail. "[N]ormal passage of time inherent in the litigation process" is not the type of delay that amounts to a special circumstance. *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996).

Finally, the bulk of the hypothesized delay – should it occur – will have been caused by Dr. Ramnath's own tactical actions. It is inconsistent for Dr. Ramnath to argue that a delay caused by her should qualify as a special circumstance justifying her release. *See In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997).

For these reasons, arguments that excessive delay constitutes a special circumstance warranting release are not accepted.

*Ramnath*, 533 F. Supp. 2d at 676 (emphasis omitted).

IV.    <u>Strong support within the community.</u>

And Risner argues that "[t]he strong community support of Mr. Risner evidenced by the attached letters constitutes yet another special circumstance favoring the setting of reasonable bail in this case":

Jay Risner enjoys strong support in the community. In letter after letter, family members and friends acknowledge that they are aware of the allegation and Request for Extradition and still pledge their unwavering support of Mr. Risner. (Ex E.)

Many courts have found that strong community support is a special circumstance warranting a person's release in an extradition case. *Kirby*, 106 F.3d at 864-65 (affirming bail in extradition case because potential extradites "enjoy the sympathy and are objects of concern of many Americans" and writing "[i]t is not presumptuous…to consider the consequences of a decision to grant or withhold bail within this larger context."). For example, in *In re Extradition of Sidali*, the court found special circumstances "in the entreaties of [Sidali's] neighbors, responsible members of the community who continue to remain firm in his support even after hearing the full presentation of the Government's evidence" and "the unwavering commitment of support by family members." 899 F. Supp. 1342, 1352 (D.N.J. 1995).

-32-

Dkt. No. 24 at 10.

The United States responds that,

[c]ontrary to Risner's assertion, courts routinely have found that community ties or support are not a special circumstance justifying bail. *See, e.g., Beresford-Redman*, 753 F. Supp. 2d at 1089-1090 (denying bail, despite strong family and community ties in United States, finding that letters in support from friends, family and business associates are not a special circumstance justifying bail). While community or family relations may, in some cases, bear on flight risk, considering them as a special circumstance would be redundant; moreover, community support simply does not qualify as a special circumstance. *See In re Extradition of Nacif-Borge*, 829 F. Supp. at 1220 (finding that eighty-five letters in support, attesting to fugitive's character, did not constitute special circumstance justifying bail); *In re Extradition of Sutton*, 898 F. Supp. 691, 696 (E.D. Mo. 1995) ("[A]n extradition fugitive's character and background ... are not by themselves a special circumstance sufficient to require release on bail in an international extradition case."); *see also In re Extradition of Schumann*, No. 18 CR 283, 2018 WL 4777562, at *5 (N.D. Ill. Oct. 3, 2018) (denying bail, where fugitive sought for crimes including robbery submitted tax documents showing that he owned and operated a business in Illinois, along with statements from relatives attesting to his good character and his role as a financial provider for his family members); *Martinelli Berrocal*, 263 F. Supp. 3d at 1305-06; *Snyder*, 2013 WL 1364275, at *3; *Campillo Valles*, 36 F. Supp. 2d at 1231.

Dkt. No. 27 at 17-18.

V.   Health issues.

Finally, Risner asserts that he,

a man of 74, is in declining health. His active health problems include [a list excluded here to permit filing this Memorandum Opinion and Order publicly while protecting Risner's privacy interests]. .... Since his incarceration he has not received medication and suffers from [redacted to permit filing this Memorandum Opinion and Order publicly while protecting Risner's privacy interests] for which he has not received treatment in custody. Courts have recognized that health issues can on their own, and in the aggregate, constitute special circumstances. *In re Huerta*, 2008 U.S. Dist. LEXIS 48524 at *6, 11-12 (S.D. Tex. June 23, 2008); *see also In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736

-33-

(W.D. La. 1999) (identifying a "serious health threat" as a special circumstance); *Salerno*, 878 F.2d at 317 (recognizing a serious deterioration in health while incarcerated as a special circumstance). Mr. Risner's declining health constitutes another special circumstance favoring the setting of reasonable bail in this case.

Dkt. No. 24 at 10-11.

The United States counters that "Risner's purported health issues are not a special circumstance":

> While some courts have found that "a serious deterioration of health while incarcerated" may constitute a special circumstance, *Salerno*, 878 F.2d at 317 (emphasis added), Risner presents no such evidence. Risner asserts that he has [a list excluded here to permit filing this Memorandum Opinion and Order publicly while protecting Risner's privacy interests]. The most recent medical documentation Risner provides – from April and August 2017 – reflects that he takes [a list excluded here to permit filing this Memorandum Opinion and Order publicly while protecting Risner's privacy interests]. Risner has not provided sufficient detail regarding his condition, his treatment needs, or any inappropriate care he has received in custody to establish that those needs exceed the detention facility's capabilities and require his release on bail. See *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 481 (S.D. Tex. 2010) ("[T]he exhibits provided by [fugitive] do not sufficiently explain to the Court that his condition is either life-threatening or so serious that his medical needs cannot be accommodated by the United States Marshal's Service while in custody."); *Burgos Noeller*, 2017 WL 6462358, at *4 (finding no special circumstances for epileptic fugitive whose submission "demonstrate[s] neither a pressing nor a plain health condition that cannot be managed by the [correctional facility]").
>
> Further, courts routinely have declined to find that health concerns – even appropriately documented ones – amount to a special circumstance. *See, e.g.*, *In re Extradition of Gohir*, No. 2:14-MJ-00314-CWH, 2014 WL 2123402, at *12 (D. Nev. May 21, 2014) (rejecting claim that detention facility was unable to meet diabetic fugitive's needs); *United States v. Nolan*, No. 08-M-97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009) ("deterioration of [fugitive's] health" based on placement in solitary confinement, while receiving treatment for skin cancer, is not a special circumstance); *Snyder*, 2013 WL 1364275, at *8 (denying bail for fugitive with history of ovarian cancer who stated that she had been vomiting blood and claimed that her condition was

worsening but had not sought treatment, finding that fugitive's "health condition is concerning, but it is not a special circumstance that supports her release," and that she "could obtain treatment for her health condition while incarcerated") (citing cases); *In re Extradition of Huerta*, No. H-08-342M, 2008 WL 2557514, at *2 (S.D. Tex. June 23, 2008) (finding high blood pressure; diabetes, requiring daily medication and a strict diet; prostate problems; and anemia are not special circumstances); *Martinelli Berrocal*, 263 F. Supp. 3d at 1301 (rejecting fugitive's claim that his age, recent surgery, medications, and the stress of detention warranted bail); *In re Extradition of Kyung Joon Kim*, No. 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004) (finding that increasing back pain that required daily anti-inflammatory medication is not a special circumstance); *Nacif-Borge*, 829 F. Supp. at 1216-17 (finding that need for specialized diet and exercise are not a special circumstance); *In re Extradition of Rouvier*, 839 F. Supp. 537, 541-42 (N.D. Ill. 1993) (finding that heart condition requiring daily medication is not a special circumstance); *Garcia*, 761 F. Supp. 2d at 481 ("[I]f most health problems constituted special circumstances serving as a basis for release, both genuine and fabricated illnesses could potentially empty federal prisons."); *In re Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1993) ("Were health problems a basis for release, both actual and feigned illnesses could rapidly empty custodial facilities. Nothing convinces me that the [fugitives'] health problems are unique or cannot be dealt with while in custody.").

Accordingly, Risner fails to establish that he has health concerns that qualify as a special circumstance to justify bail.

Dkt. No. 27 at 15-17 (footnote omitted).

Another judge in this circuit has addressed this potential special circumstances

and explained in that case that

[t]he Court recognizes that certain medical concerns may or may not constitute special circumstances. *See, e.g.*, *Huerta*, 2008 WL 2557514, at *2 and *4 (Mellitus Diabetes, digestion problems, prostate problems, high blood pressure and anemia are not life-threatening and do not constitute special circumstances) (a life-threatening chronic heart condition, high blood pressure, coronary artery disease, prostate cancer and frequent blood clots, all supported by doctor's affidavit, constitute special circumstances); *Nacif-Borge*, 829 F. Supp. at 1217 (health condition is not a special circumstance because it is not debilitating and is easily controlled even though he only has one kidney and requires a special

diet); *In re Extradition of Rouvier*, 839 F. Supp. 537, 541 n.9 (N.D. Ill. 1993) (special circumstances did not exist when respondent admitted that medical condition is merely "potentially serious" and could be controlled with medication). Reliable and quantifiable evidence, including documented medical evidence from a physician, could suffice for an adequate showing. *See, e.g.*, *Nacif-Borge*, 829 F. Supp. at 1217. However, if most health problems constituted special circumstances serving as a basis for release, both genuine and fabricated illnesses could potentially empty federal prisons. *Hamilton-Byrne*, 831 F.Supp. at 290-291 (S.D.N.Y. 1993).

In this matter, Garcia has not provided sufficient detail regarding his condition or his medical treatment needs to convince the Court that the severity of his condition is a special circumstance warranting release on bond. That is, the exhibits provided by Garcia do not sufficiently explain to the Court that his condition is either life-threatening or so serious that his medical needs cannot be accommodated by the United States Marshal's Service while in custody. His exhibits simply support his assertions that he has received medical treatment and has been referred to specialists by other physicians. (*See* Dkt. No. 11, Ex. 2 and 3). As such, while the Court does not question the seriousness of Garcia's medical conditions, they do not appear to be life-threatening, or so complex as to be beyond the capacity of federal authorities to manage while he is in their custody.

*Garcia*, 761 F. Supp. 2d at 481-82; *see also id.* at 483 ("Moreover, the Court finds that Garcia does not have 'special circumstances' that merit his release. Regarding his health issues, Garcia does not sufficiently explain to the Court that his condition is either life-threatening or so serious that his medical needs cannot be accommodated by the United States Marshal's Service while in custody.").

VI. <u>Consideration of alleged special circumstances as a whole.</u>

According to Risner, "[a]ll of the above special circumstances, taken individually or collectively, create special circumstances warranting the setting of reasonable bail in this matter." Dkt. No. 24 at 11. The government counters that,

for special circumstances to be legally relevant, the Court would need to

find that Risner poses no flight risk and no danger to the community. In any event, the circumstances Risner asserts are not special as a matter of law. Viewed alone or cumulatively, they are insufficient to justify bail on any terms.

Dkt. No. 27 at 10.

As the parties agree, the Court must decide if Risner has presented "a special circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail." *Ramnath*, 533 F. Supp. 2d at 666.

At the hearing, Risner's counsel argued that the biggest issue is Colombia's ongoing failure to comply with the Treaty's requirements, as laid out in Risner's Motion to Dismiss, and that, after pretty much nothing happened for 20 years, and where extradition is controlled by the Treaty, Colombia is still not in compliance with its obligations to provide required documents and translations. Accordingly, she contends, because of this obvious lack of compliance, there is right now a substantial likelihood of success of defeating the United States's extradition efforts, whatever Colombia may or may not produce before the extradition hearing, and that, coupled with the weak weight of the evidence the United States offers to show probable cause against American standards, as the Treaty requires, amounts to a special circumstance warranting release on conditions.

Risner's counsel also emphasized that Colombia and the United States's waiting so long to seek extradition and arrest Risner demonstrates that there is no diplomatic necessity for denying bail and detaining Risner pending the extradition hearing.

The government's counsel countered at the hearing that Risner's counsel conflates the timing of requirements under the Treaty for the extradition hearing with the timing of requirements for securing Risner's detention pending that hearing. The government's counsel pointed out that Risner has cited, and that the government's counsel is aware of, no case law dictating that any and all documents required by a treaty must be produced – or that the United States and Colombia must be in full compliance with the Treaty's requirements – by the time of a detention hearing, as opposed to the extradition hearing. And the government's counsel argued that Risner has a history of making false statements and promises to courts and law enforcement, and the government urged the Court to look at Risner's conduct, not his empty promises.

After carefully considering the record before the Court and the parties' submissions, evidence, and arguments, the Court determines that Risner has not shown a special circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail.

Although he is not as young as he used to be, Risner has not shown that his health condition is either life-threatening or so serious that his medical needs cannot be accommodated by the United States Marshal's Service while in custody. Risner's ties to his community in Dallas and support from his family members and neighbors likewise do not create a compelling case for release on bail pending the extradition hearing, nor does Risner's speculation that these extradition proceedings may be lengthy based on Colombia's alleged lack of compliance with the Treaty's requirements.

As to that lack of compliance – on which Risner primarily relied at the detention hearing and as to which Risner's counsel conceded that Colombia could remedy by supplying any missing paperwork and translations – the Court will not prejudge the final resolution of the Motion to Dismiss or the ultimate outcome of an extradition hearing. But the Court is not persuaded, on this record, that Risner's belief that he will be able to show a lack of probable cause by taking issue with facts or evidence on which his Colombian conviction was based, his assertion that the statute of limitations may have run on the enforcement of his sentence (in the face of Colombia's interpretation the limitations period is interrupted "if the person convicted is arrested by reason of the sentence"), and his contention, on which he primarily relies, that Colombia allegedly is not currently in compliance in advance of the extradition hearing show such a likelihood of success on the ultimate matter of extradition as to create a compelling case for release on bail pending the extradition hearing. *See generally U.S. v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) (noting that "the probable cause standard is lower than the preponderance standard").

And, finally, the Court is not persuaded that Risner must be released because, collectively, Colombia and the United States took almost 20 years from the date of Risner's conviction's affirmance on appeal by Colombia's Supreme Court of Justice, Criminal Cassation Division to initiate extradition proceedings. The Court understands Risner's argument, which some other judges have accepted in certain circumstances, that detention may be unnecessary pending a hearing on a requested extradition that the requesting country took a long to time to formally seek. But the Court is not

persuaded that, even if the delay reflects that Colombia has not made Risner's extradition to serve his sentence a priority, this weighs heavily (or otherwise) in favor of release. Colombia is now – however much later than it could have – formally seeking Risner's extradition, to face the consequences of a conviction in that country for aggravated homicide, under a treaty that creates a binding obligation on the United States government to surrender fugitives to Colombia, as its treaty partner, if and when they are found to be extraditable. Now that Colombia has sought extradition – and Risner is facing an actual extradition proceeding and not simply the latent possibility of one – the government's strong interest in denying bail based on its need to ensure that the United States fulfills its international treaty obligations is not, in this Court's view, diminished by the time that passed in these governments' collective efforts to initiate this process.

Because Risner has failed to establish a circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail, and because he cannot establish that he should be released without having done so, the Court need not analyze whether Risner can show that he is neither a flight risk nor a danger if released on conditions or bail pending an extradition hearing.

## Conclusion

For the reasons explained above, the Court GRANTS the United States's Motion for Detention [Dkt. No. 5] and DENIES Risner's Motion for Bail [Dkt. No. 24] and ORDERS that Tito Jay Risner a/k/a Jay Michael Risner a/k/a Tito Risner a/k/a Jose

Tito Rodriguez Calderon will remain detained pending the extradition proceedings in this matter under 18 U.S.C. § 3184.

SO ORDERED.

DATED: December 27, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE