IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| IN THE MATTER OF THE | § | No. 3:18-mj-765-BN |
| EXTRADITION OF | § | |
| | § | |
| TITO JAY RISNER A/K/A | § | |
| JAY MICHAEL RISNER A/K/A | § | |
| TITO RISNER A/K/A | § | |
| JOSE TITO RODRIGUEZ CALDERON. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

On November 16, 2018, the United States of America filed a complaint for the extradition of Tito Risner a/k/a Jay Risner a/k/a Jose Tito Rodriguez Calderon ("Risner") at the request of the Government of the Republic of Colombia ("Colombia") pursuant to the extradition treaty between the United States and Colombia, the Extradition Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) (the "Treaty"), *available at* 1979 U.S.T. LEXIS 199. The United States seeks Risner's extradition in accordance with its treaty obligations to Colombia, *see* Dkt. No. 1, and moved to detain Risner following his arrest on a warrant [Dkt. No. 22] issued in connection with the United States's complaint filed under 18 U.S.C. § 3184, *see* Dkt. Nos. 5 & 14.

Risner, through his retained counsel, filed a Motion to Dismiss, *see* Dkt. No. 23, asserting that, "[i]n this extradition request, Colombia has failed to follow extradition procedures and provide all required documents pursuant to Article 9 of the Extradition

Treaty with the Republic of Colombia, U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8 (1981) ('Treaty')," and that "Colombia is in violation of the terms of the treaty, therefore this matter must be dismissed," *id.* at 1.

The United States then filed a Notice of Filing of Supplement to Extradition Request, *see* Dkt. No. 26, in which it explained:

> On November 16, 2018, Tito Risner a/k/a Jay Risner a/k/a Jose Tito Rodriguez Calderon ("Risner," "Rodriguez Calderon," or the "fugitive") was arrested on the basis of a complaint seeking his extradition to the Republic of Colombia ("Colombia") to serve a sentence for aggravated homicide. Attached to the filed complaint was the original Extradition Request submitted by the Government of Columbia (ECF No. 1-1).
> On February 23, 2018, the United States sent a diplomatic note to Columbia requesting that the Government of Columbia submit a certified supplement to the original extradition package from Columbia. In this diplomatic note, the United States requested that Columbia submit a Supplement which provides a text of the applicable Columbian laws describing the essential elements and designation of the offenses for which extradition is requested, and describing the time limit on the prosecution of the execution of punishment for the offenses as required by Articles 9(2) and 9(5) of the Extradition Treaty between the United States and the Republic of Columbia.
> Attached hereto as Exhibit A is the certified Supplement (dated July 23, 2018) with Spanish and English translations which was provided to the United States by the Government of Columbia. This Supplement to the original Extradition Request is admissible at the extradition hearing pursuant to 18 U.S.C. § 3190.

*Id.* at 1-2.

The United States then filed the Government's Response in Opposition to Fugitive's Motion to Dismiss Complaint, *see* Dkt. No. 36, and a Notice of Filing – Supplemental Document, *see* Dkt. No. 37, in which it explained that

> [a]ttached hereto is a diplomatic note from the Government of Colombia, dated January 3, 2019, to the Government of the United States, explaining that the fugitive's arrest in the United States on November 16,

2018, interrupted the Colombian limitations period, which otherwise was set to expire on November 23, 2018.

*Id.* at 1 (footnote omitted). The United States also noted that, "[i]n providing this information, neither government concedes that the Treaty required the Government of Colombia to submit it." *Id.* at 1 n.1.

Risner then filed his Relator's Reply to Government's Response to Motion to Dismiss, *see* Dkt. No. 38, and Supplement to Relator's Reply to Government's Response to Motion to Dismiss, *see* Dkt. No. 42.

The undersigned United States magistrate judge is authorized to conduct the proceedings in this matter under 18 U.S.C. § 3184 and 28 U.S.C. § 636. *See Noel v. U.S.*, 12 F. Supp. 2d 1300, 1305 (M.D. Fla. 1998); *see generally Ntakirutimana v. Reno*, 184 F.3d 419, 423 n.8 (5th Cir. 1999) ("The judicial officer, whether state or federal, who is authorized to hold an extradition hearing pursuant to the terms of 18 U.S.C. § 3184 is often referred to as a 'magistrate' or as the 'committing court.'").

The Court held oral argument on January 24, 2019 on Risner's Motion to Dismiss [Dkt. No. 23], and Risner, his counsel, and the United States's counsel appeared. *See* Dkt. Nos. 32, 43, & 44.

For the reasons explained below, the Court DENIES Risner's Motion to Dismiss [Dkt. No. 23].

## Background

As background, the United States asserts that,

[a]ccording to information the Government of Colombia has provided:
    On December 9, 1994, the Colombian Criminal Court Six, Circuit

of Cartagena, found the fugitive guilty of the aggravated homicide of his wife, Patricia Gomez de Risner (the "victim" or "Risner's wife"), in violation of Article 323 of Colombia's Criminal Code, and sentenced him to twenty years imprisonment. The conviction was affirmed on appeal, first by the Superior Tribunal of the Judicial District of Cartagena on April 20, 1995, and then by the Supreme Court of Justice, Criminal Cassation Division, on November 23, 1998. The extradition request from the Government of Colombia contains supporting documentation including the aforementioned Colombian court decisions, which reflect the following:

a. The victim was Risner's wife. She was born in Colombia, and lived in Texas.

b. In early July, 1990, the victim and Risner were visiting Cartagena, Colombia. On July 4, 1990, the victim was shot fatally while walking with her sister and mother.

c. Colombian police officers arrested Raul Alberto Ramirez Montoya (Ramirez Montoya) and Yolanda Zuluaga Velez (Zuluaga Velez) at the scene. The two were implicated in the homicide through questioning and were convicted of the murder.

d. Hotel and other records reflected that the Risners arrived at the Hotel Bellavista in Cartagena three days before the murder, on July 1, 1990. Risner's co-defendant and relative, Jairo Hernandez Pachon ("Hernandez Pachon"), arrived at the same hotel on the same date, and shared a room with Ramirez Montoya and Zuluaga Velez, adjacent to the room that Risner and his wife occupied. [In the same proceeding as Risner, the court convicted Hernandez Pachon of being an accomplice to the aggravated homicide and sentenced Hernandez Pachon to ten years imprisonment.] Hernandez Pachon also paid Ramirez Montoya and Zuluaga Velez's hotel bill. Given their proximity to the victim while she was a guest at the hotel, Ramirez Montoya and Zuluaga Velez had opportunities to become aware of the victim's identity and appearance. Further, a Colombian police agent testified that he had obtained confidential information that when Risner and his wife were walking on the beach, Risner "made signs" to hire Hernandez Pachon and his companions.

e. Risner was the beneficiary of at least five policies insuring the victim's life for a total value of approximately USD $1.73 million in the 1990s. Some, if not all, of the insurance companies investigated the victim's death and had declined to pay the proceeds to Rodriguez Calderon, prompting Risner to sue them in the United States District Court for the Northern District of Texas. *See Risner v. Amex Life Assur. Co.*, No. Civ. A No. 3-91-1646, 1993 WL 55957, at *1 (N.D. Tex. Jan. 19, 1993) (noting that Tito Risner was the designated beneficiary of several

life insurance policies on the victim's life and had tried to collect against seven insurance companies). The Colombian court had before it the results of said investigation. The court found that Risner had purchased an abnormal number of policies on the victim's life, in an abnormal amount, considering that the victim worked as a nurse and was not exposed to sufficient risk to justify such coverage. The court also noted that the policies exceeded the couple's economic capacity. [On approximately January 16, 1991, plaintiff Tito Jay Risner also appears to have filed suit against the Estate of Patricia Gomez Risner in Dallas County Probate Court (Case No. PR-91-00180-1).]

f. According to the victim's sister, during the afternoon of the shooting, Risner continuously passed from one side to the other of the hotel windows, from which he could see the street and watch the shooting occur.

g. Following the murder, Colombian law enforcement interviewed Risner, who asserted that his wife's death should not be investigated. Colombian authorities who conducted the interview also reported that Risner seemed defensive and told them he did not know why they were taking his statement. [In its decision, the Colombian court listed the evidence before it, including an "Affidavit of Tito Risner."] Crediting testimony from a police agent who testified based on observing Risner and fifteen years of professional experience, the court found that Risner exhibited a strange and cunning attitude at the interview.

h. According to the victim's family, the fugitive told them to do nothing regarding the investigation because there was no point to it.

i. Risner departed Colombia abruptly on July 6, 1990, the day after the victim's burial.

j. Ramirez Montoya, who ultimately was convicted of the murder, made statements to police in an effort to prove his own innocence. For example, Ramirez Montoya stated that the victim's husband was outside of and opposite the hotel where the shooting occurred and described the clothes the victim's husband was wearing. The Colombian court found that a prior familiarity and criminal link existed between Ramirez Montoya and Risner because Risner was not on the scene when the shooting occurred, whereas Ramirez Montoya was apprehended immediately after the shooting, and Ramirez Montoya's mentioning an absent stranger to exculpate himself would have made little sense.

k. According to the victim's family, although Risner had told the victim that he was a bachelor Spaniard named Tito Jay Risner, they discovered after the victim's murder that, in fact, he was a married Colombian named Jose Tito Rodriguez Calderon. In April 1993, the victim's sister reported to Colombian law enforcement, based on information she had received from the fugitive's sister's husband, that

Rodriguez Calderon had changed his name to Risner upon moving to the United States. Colombian law enforcement determined, from Colombian civil records including a photographic identity card, that Risner was born in Colombia on February 6, 1944, as Jose Tito Rodriguez Calderon (and was listed in records from 1965 as married to a woman named Fronny Avillan, to whom the Colombian court alternately refers as Fronny Saito). [The extradition request includes a copy of the fugitive's Colombian identity card, which was issued on July 30, 1965, reflecting this information. See DOJ-OIA-008 (translation at DOJ-OIA-127).] The Colombian court found, based on testimony from the victim's family, that the victim was unaware of Risner's double identity despite being married to him and having two children with him, that Risner had deceived the victim about his identity, and that this deception indicated that Risner had mounted a plot against the victim.

l. While Risner was not physically present for the Colombian court proceedings against him, the Colombian court received and admitted two power-of-attorney forms from Tito Jay Risner.

m. The Colombian court decisions indicate that Risner's Colombian counsel did not contest that Risner is Rodriguez Calderon.

Dkt. No. 14 at 2-5 (footnotes omitted).

Risner asserts that dismissal is required for the following reasons:

Evidentiary factors relevant to the court's determination include "[r]equired documents presented in accordance with United States law, translated and duly authenticated by a United States consul[.]" *In re Extradition of Bonilla*, No. 1:13-MJ-62, 2014 WL 934903, at *4 (E.D. Tex. Mar. 4, 2014). Article 9 governs "Extradition Procedures and Required Documents." Treaty at Art. 9. The Government of Colombia is in violation of the treaty.

**A. The Extradition Request Fails to Provide All Documents**
Article 9 requires production of the following documents:

Section (2)(c): The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested.

Section (2)(d): The texts of the laws describing the punishment for the offense.

Section (2)(e): The texts of the laws describing the time limit on the prosecution or the execution of punishment for the

offense.

> Section (4): Statement showing to what extent the sentence has not been carried out.

Treaty at Art. 9.

Colombia has failed to provide these documents in accordance with the Treaty.

### B. The Extradition Request Fails to Provide Translations and Legible Documents

Article 9(5) requires "all documents to be submitted by the Requesting State in accordance with Articles 9 and 10 of the Treaty [] be translated into the language of the Requested State." Treaty at Art. 9(5). *See also* M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 767 (4th ed. 2002) ("All the foreign documents must be translated into English and the translation authenticated pursuant to section 3190.").

Colombia has failed to provide translations of the following documents:

- ID 25-39
- ID 129
- ID 41-2

Columbia has failed to provide legible copies of the following documents:

- ID 47-74

Columbia has failed to provide complete documents:

- ID 23
- ID 41
- ID 78
- ID 81
- ID 86
- ID 153
- ID 191

Dkt. No. 23 at 1-3 (footnote omitted). "For the foregoing reasons, Mr. Risner respectfully requests that the Court dismiss the extradition petition." *Id.* at 3.

And, in his reply in support of his Motion for Bail, Mr. Risner further asserted that

[e]videntiary factors relevant to the court's determination include "[r]equired documents presented in accordance with United States law, translated and duly authenticated by a United States consul[.]" *In re Extradition of Bonilla*, No. 1:13-MJ-62, 2014 WL 934903, at *4 (E.D. Tex. Mar. 4, 2014). Article 9 governs "Extradition Procedures and Required Documents." Treaty at Art. 9. The Government of Colombia is in violation of the treaty, giving Mr. Risner a high probability of success on the merits.

## A. Colombia Still Fails to Provide All Documents

Article 9 requires production of the following documents:

> Section (2)(c): The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested.

> Section (2)(d): The texts of the laws describing the punishment for the offense.

> Section (2)(e): The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense.

> Section (4): Statement showing to what extent the sentence has not been carried out.

Treaty at Art. 9.

Exhibit A to the Supplement to Extradition Request (Dkt. 26) provides an enlarged version of the same Spanish language illegible documents originally produced at ID 25-39 (the Diario Oficial), which still have not been translated. Colombia's provision of a translation of Article 323 (Homicide), Article 324 subsections 1 and 4 (Homicide Sentencing Enhancement), and Article 87 (Term for the Prescription of Punishment) still do not satisfy Article 9 of the Treaty.

Colombia only provided subsections 1 and 4 of Article 324, defining the aggravated circumstances of the crime of homicide. However, Criminal Court Six states that "Jose Tito Rodriquez Calderon should be punished for the crime of aggravated homicide, since the third and fourth causes of Section 324 of the Criminal Code are satisfied, that is, the deed was committed against his spouse, and in the interest of gain." ID 163 (emphasis added). Columbia has failed to provide the third cause of Section 324. Without providing the entire code section, Colombia has failed to meet its requirement under section (2)(c).

Additionally, throughout the three court opinions, references are

made to 16 articles from the Colombian Criminal Procedure Code. None on these code sections have been provided. (Criminal Procedure Code Articles 23 (ID 159, 160), 24 (ID 159), 61 (ID 163), 106 (ID 164), 107 (ID 164), 247 (ID 151, 162, 169), 253 (ID 151), 263 (ID 151), 300 (ID 150, 152, 183), 301 (ID 152), 302 (ID 152), 334 (ID 164), 346 (ID 170), 441 (ID 147), 501 (ID 165), 508 (ID 163).) This includes Article 247, which defines the "certainty of responsibly" required for conviction, which should be considered an "essential element…of the offense" required to be produced under the Treaty. ID 151, 162 ("all the requirements for conviction").

Mr. Risner has a high probability of success on the merits given that Colombia has failed to provide these documents in accordance with the Treaty. This is a special circumstance that warrants bail.

### B. Colombia Has Provided Conflicting Translations of the Same Code Sections

Colombia has provided conflicting translations of code sections for Article 323 (Homicide) and Article 324 (Homicide Sentencing Enhancement). In Exhibit D to Government's Response in Opposition to Motion for Bail (Dkt. 27) the articles are translated as follows:

> Article 323: "He who kills another will be liable to imprisonment from 25 to 40 years."
>
> Article 324: "Punishment will be for 25 to 40 years imprisonment if the conduct described in the preceding Article is committed…."

Gov. Resp. in Opp., Ex. D at ID 505 (emphasis added). (The email, that is part of Ex. D, has not been translated.)

However, in Ex. A to Government's Supplement to Extradition Request (Dkt. 26) the same articles are translated differently:

> Article 323: "He who kills another will be liable to imprisonment from 10 to 15 years."
>
> Article 324: "Punishment will be for 16 to 30 years imprisonment if the conduct described in the preceding Article is committed…."

Supp. to Extradition Request, Ex. A at ID 412 (emphasis added).

Colombia's failure to provide consistent code sections and translations describing "the essential elements and the designation of the offense for which extradition is requested" as required by the Treaty gives Mr. Risner a high probability of success – a special circumstance justifying the setting of bail."

Dkt. No. 28 at 1-4 (footnotes omitted).

"The United States, on behalf of the Government of Colombia ('Colombia') and

in fulfillment of its treaty obligations," responds that the Motion to Dismiss "is (1) premature because the question of whether Colombia's extradition request satisfies the legal requirements for certification is a matter for the Court to determine at an extradition hearing; or, in the alternative, (2) meritless because the extradition request complies with the Treaty's requirements." Dkt. No. 36 at 1-2 (footnote omitted).

The United States contends that

18 U.S.C. § 3184 requires the Court to hold an extradition hearing, where the Court will hear arguments and determine the sufficiency of Colombia's extradition request. *See* 18 U.S.C. § 3184 (stating that the court may issue a warrant "to the end that the evidence of criminality may be heard and considered.... If on such hearing, [the court] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention ..., [the court] shall certify the same ... to the Secretary of State").

At this stage in the matter, where the government has filed its complaint but before the extradition hearing, "[t]he government need not ... prove its case, but need only state a claim." *In re Extradition of Koskotas*, 127 F.R.D. 13, 23-24 (D. Mass. 1989) (denying motion to dismiss before extradition hearing, where fugitive argued, among other things, that Greece failed to make sufficient showing that it sought extradition for "enumerated offens[es] under the Treaty, ... punishable under Greece's own criminal law," *id.* at 18-19, and finding fugitive's claims "premature," *id.* at 25); *see United States v. Godwin*, No. CRIM.A. 14-69 MAG, 2014 WL 5093281, at *2 (E.D. La. Oct. 9, 2014) (denying motion to dismiss before extradition hearing, finding that "the documentation presented thus far" on behalf of the Government of Curaçao "is sufficient under Section 3184 in that, read as a whole, it constitutes a 'complaint made under oath, charging any person found within [this court's] jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention'" (quoting 18 U.S.C. § 3184), stating that determination whether to certify extradition to Secretary of State "is appropriately made at or shortly after the upcoming [extradition] hearing," and stating that ruling on dismissal "motion papers at this time, rather than after the extradition hearing itself, would be premature.") (emphasis added). Here, the allegations in the complaint and the accompanying declaration from the U.S. State Department alone

state a claim sufficient under 18 U.S.C. § 3184.

*Id.* at 2-3. The United States argues that Risner's "assertions about a photocopy on ECF do not demonstrate that Colombia has failed to make a submission that satisfies the Treaty, let alone that the Court should entertain this motion before holding an extradition hearing with Colombia's submission before it." *Id.* at 6 (emphasis omitted).

According to the United States, "the motion is premature and should be held in abeyance until the extradition hearing," or, alternatively, "[i]n the event the Court is willing to entertain the motion on the merits, the Court should deny it as meritless," where "Colombia has fulfilled all that the Treaty requires, including all of the Treaty provisions that Risner invokes, by providing (1) the texts of the laws that Article 9(2)(c)-(e) requires; (2) a statement showing the extent to which the sentence has been carried out, as Article 9(4) requires; and (3) legible copies and translations of all documents the Treaty requires, *see* Treaty Art. 9(5)." *Id.*

And, the United States asserts,

> [i]n his reply memorandum requesting bail, but not in any amendment to the instant motion, Risner suddenly asserted that the Treaty requires Colombia to provide 16 articles from its Criminal Procedure Code simply because the Colombian courts made passing reference to them at some point. In the event the Court nevertheless wishes to entertain this argument, the government notes that it is meritless. Risner fails to identify any requirement in Article 9(2) of the Treaty that all laws to which a court in the country seeking extradition has made a passing reference anytime in the history of the case must be included in an extradition request. Further, the Colombian courts' passing references to these provisions indicate that they pertain to such irrelevant matters as the general difference between primary and accomplice liability (Art. 23-24); general criteria for increasing a minimum penalty (Art. 61); damages liability, which the Colombian court did not even impose (Arts. 106-07, Art. 334); the general standard for "certainty of responsibility" required

to find guilt under Colombian law (Art. 247); the Colombian generality that "evidence must be assessed as a whole, in accordance with the rule of healthy criticism" (Art. 253); the Colombian evidentiary principle called "freedom of evidence" (Art. 263); the Colombian definition of "indicative evidence" (Art. 300); a passing reference to unspecified other evidentiary "suppositions" (Arts. 301-02); the law concerning charging a fugitive (Art. 346); minimum requirements to be found by the Colombian prosecution service before trial (Art. 441); the list of authorities to receive copies of a criminal decision once it becomes final (Art. 501); and unspecified "appropriate measures" to be taken in connection with paternity rights over minors (Art. 508).

....

[And, in] his reply memorandum in support of his bail application, but not in in the instant dismissal motion or in any amendment thereto, Risner has made new claims about Colombia's supplemental submission concerning Article 324 (aggravated homicide). (*See* ECF No. 28 at Page ID 512.) To the extent the Court nevertheless wishes to consider such claims at this time, they are a red herring.

*Id.* at 14-15.

Finally, the United States contends that, "[e]ven if one of Risner's purported treaty interpretations were theoretically plausible, to the extent he urges a narrow and restricted construction to disfavor extradition, this too warrants denying the instant motion. At an extradition hearing, a court should construe the applicable treaty liberally to effectuate its purpose, namely, surrender of fugitives to the requesting country." *Id.* at 17-18.

"[F]or the reasons set forth above, the United States respectfully requests that the Court hold the motion in abeyance pending the extradition hearing or, in the alternative, deny the motion as meritless." *Id.* at 18.

Risner replies that

[t]he law related to extradition mandates that Colombia satisfy various requirements in order to certify extradition. See 18 USC § 3184; *see also*

*In re Extradition of Bonilla*, No. 1:13-MJ-62, 2014 WL 934903, at *4 (E.D. Tex. Mar. 4, 2014) and *Matter of Demjanjuk*, 603 F. Supp. 1468, 1470 (N.D. Ohio 1985). The two main requirements at issue in this case are the need to provide the documents called for by the Treaty and Colombia's obligation to establish probable cause to believe that Mr. Risner committed the offense for which extradition is sought. U.S.-Colom., Sept. 14, 1979, S. TREATY DOC. NO. 97-8, art. 9 (1981) ("Treaty"). Despite having approximately 18 years to prepare its extradition request, Colombia has failed to provide the documents required by the Treaty. Notwithstanding the additional documentation submitted with the Supplement to Extradition Request (Dkt. 26) and the Diplomatic Note dated January 3, 2019 (Dkt. 37), Colombia's request is still lacking. While the United States and Colombia have tried to save this deficient extradition request, it is clear that it cannot be saved. The United States and Colombia are in violation of the terms of the Treaty, therefore this matter must be dismissed.

....

By the very language of the Treaty, this motion is not premature. Article 9(2) states that "[t]he request for extradition shall be accompanied by" the required documents. (Emphasis added.) Colombia made the request for the extradition of Jose Tito Rodriguez Calderon in 2000 – that is when the documents were required to be produced. Even if the request for extradition is based on the renewed inquiry by the United States in 2018, Colombia has been required to provide documents required by the Treaty since 2000.

This Court has the authority to dismiss this matter prior to the extradition hearing. In *In the Matter of the Extradition of Giovanni Ferriolo*, the court granted the relator's motion to dismiss. 126 F. Supp. 3d 1297, 1299 (M.D. Fla. 2015). The court found that "Italy and the United States violated the express provisions of the Treaty by failing to provide all required documentation to [relator]" and "failed to show probable cause to believe [relator] committed the offenses for which he was convicted in absentia." *Id.* at 1301, 1305.

Dkt. No. 38 at 1.

According to Risner,

"[e]xtradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses." *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936). That does not mean a requesting state may wholly disregard its Treaty obligations at the accused's expense. Rather, "treaties should be faithfully

-13-

observed, and interpreted with a view to fulfill our just obligations to other powers, without sacrificing the legal or constitutional rights of the accused." *Grin v. Shine*, 187 U.S. 181, 184 (1902). Here, Colombia's failures are not mere technical lapses; rather, they are substantive in nature and strike at Mr. Risner's ability to defend himself in these proceedings. *See, e.g.*, *Valenzuela*, 286 F.3d at 1226-27 (noting that the magistrate judge, in denying Italy's first extradition complaint, refused to consider an affidavit submitted by Italy that violated the treaty's requirements); *Lo Duca v. United States*, 93 F.3d 1100, 1111 (2nd Cir. 1996) (noting that relator's objection to Italy's failure to comply with the treaty's requirement had merit, but finding that relator waived the argument).

Without the texts of all the applicable Colombian criminal code sections, neither Mr. Risner nor this Court can determine with certainty whether this case has been time barred by the statute of limitations (Treaty, art. 6) or if there is probable cause (Treaty, art. 9(3)(c)).

....

The deficiencies in the documents produced are more than a mere technicality. The United States is minimizing the importance of the code sections cited by the Colombian courts in convicting Mr. Risner. Many of these code sections go to the heart of decision.

....

The Treaty requires a showing of "[s]uch evidence as would provide probable cause to suspect, according to the laws of the Requested State, that the person sought has committed the offense for which extradition is requested." Treaty, art. 9(3)(c) (emphasis added). Probable cause requires a finding that the evidence presented supports a reasonable belief that the person whose extradition is sought is guilty of the crime charged. *Yapp v. Reno*, 26 F.3d 1562, 1564 (11th Cir. 1994); *In re Ribaudo*, 2004 WL 213021, at *5 (S.D.N.Y. Feb. 3, 2004). The standard for determining whether probable cause is established for extradition purposes is the same as that for federal preliminary proceedings. *See Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433 (S.D. Fla. 1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994). "The federal probable cause standard requires 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id.* (quoting *Republic of France v. Moghadam*, 617 F.Supp. 777, 782 (D.C.Cal. 1985)). Conclusory statements are insufficient to establish probable cause for purposes of extradition. *United States v. Fernandez-Morris*, 99 F.Supp.2d 1358, 1365 (S.D. Fla. 1999) (citation omitted).

According to the court in *Ferriolo*, the probable cause determination can only be made based on the documents which have been

properly provided. *Ferriolo*, 126 F. Supp. 3d at 1304. "The Court must evaluate the sufficiency of the evidence to determine whether there is probable cause to believe [relator] violated the statutes for which the necessary documentation had been provided." *Id.* (emphasis added). "Without English translation copies of certain of the statutes [relator] allegedly violated, the Court cannot determine whether there is probable cause to believe the elements of those crimes has been shown." *Id.*

Here, the Court has not been provided with the laws relating to the essential elements of the offense, including the level of guilt required to be convicted of homicide in Colombia, and the laws relating to the time limit on the execution of punishment. Without these essential code sections, probable cause cannot be established. Because probable cause cannot be established due to Colombia's noncompliance with the Treaty, this extradition petition must be dismissed.

....

The deficiencies are not the type that "savor of technicality" as the government asserts. *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

.....

Mr. Risner is not urging a construction of the Treaty that would restrict reciprocal operation of the treaty. Mr. Risner is asking this Court to acknowledge and recognize Colombia's failure to comply with the terms of the Treaty.

Dkt. No. 38 at 3, 15-17 (citation omitted).

Finally, Risner contends,

[a]ssuming, for the sake of argument, that Colombia has complied with the Treaty in providing all the required documents, due process still requires this extradition request to be dismissed. Despite the limited role of the court in an extradition proceeding, "the judiciary must ensure that the constitutional rights of individuals subject to extradition are observed." *Valenzuela*, 286 F.3d at 1229. Mr. Risner is a United States citizen subject to extradition in a United States court. He should be entitled to due process protections. ....

Given the state of the documents provided to Mr. Risner, he has not received fair notice. If Mr. Risner is forced to defend himself based on what has been provided, then due process will be violated. Having provided the Court with a clean set of the documents does not get around this due process violation. *Ferriolo* states that the requesting state has to provide the required documents to the relator. 126 F. Supp. 3d at 1301 (finding that "Italy and the United States violated the express provisions of the Treaty by failing to provide all required documentation to

[relator]").

Even if this Court is willing to overlook the failure of the United States and Colombia to submit in both languages all of the required documents, and if this Court is willing to accept that the deficiencies with the documents are solely ECF photocopying problems, Mr. Risner cannot be forced to defend against this extradition without the ability to read all the documents provided with the request.

....

The United States points to the fact that this Court reviewed the request for extradition as somehow absolving any deficiencies with the documents. However, it is not the job of the Court to challenge the state of the documents. That is why relators have defense attorneys.

Recognizing the principles of law, order, fairness and justice, this matter must be dismissed.

Dkt. No. 38 at 17-19.

## Legal Standards

The United States Court of Appeals for the Fifth Circuit has previously "outlin[ed] the process of international extradition":

The substantive right of a foreign country to request the return of a fugitive and the duty of the United States to deliver the fugitive depends entirely on the existence of a treaty between the requesting nation and the United States. 18 U.S.C. § 3181 (1976), *Factor v. Laubenheimer*, 290 U.S. 276, 287, 54 S. Ct. 191, 193, 78 L. Ed. 315 (1933). To invoke its right to extradite a fugitive, the requesting nation must submit its request to a state or federal court. 18 U.S.C. § 3184 (1976). (In practice, the requesting nation submits its request to the Secretary of State who may request the Justice Department to file a verified extradition complaint. *See Matter of Assarsson*, 670 F.2d 722, 725 (7th Cir. 1982).) The court determines whether the fugitive is subject to extradition and, if so, must order the fugitive's commitment and certify the supporting record to the Secretary of State. *Id.* The decision to surrender the fugitive then rests in the discretion of the Secretary of State. 18 U.S.C. § 3186 (1976); *Escobedo v. United States*, 623 F.2d 1098, 1105 n.20 (5th Cir.), *cert. denied*, 449 U.S. 1036, 101 S. Ct. 612, 66 L. Ed. 2d 497 (1980).

*In re U.S.*, 713 F.2d 105, 107-08 (5th Cir. 1983) (footnote omitted).

18 U.S.C. § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate judge of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

18 U.S.C. § 3184; *see also* 18 U.S.C. § 3181(a)(1) ("The provisions of this chapter relating to the surrender of persons who have committed crimes in foreign countries shall continue in force only during the existence of any treaty of extradition with such foreign government."). "This section authorizes a judicial officer to hold a hearing to consider a request for surrender. If the judicial officer finds the evidence sufficient to sustain the charges under the treaty or convention, then the officer certifies to the Secretary of State that the individual may be surrendered." *Ntakirutimana*, 184 F.3d at 422 (citing 18 U.S.C. § 3186 ("conferring final authority on the Secretary of State to order a fugitive's surrender where a judicial officer has ruled that the requirements for

extradition have been met")).

As another judge in this circuit recently explained:

> International extradition proceedings are governed both by statute (18 U.S.C. §§ 3181, 3184, 3186, 3188-3191) and by treaty. *See* 18 U.S.C. § 3184. In applying an extradition treaty, the court is to construe it liberally in favor of the requesting nation. *Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933). .... Because the Treaty is central to the proceedings, at the extradition hearing, the court will have to determine whether the Treaty is a valid extradition treaty in force between the United States and [the requesting country], then must determine whether it is applicable, and finally consider whether the requirements of the treaty have been satisfied. *See* 18 U.S.C. § 3184; *Bozilov v. Seifert*, 983 F.2d 140, 143 (S.D.N.Y. 1999) (considering whether extradition request was made timely under the terms of the treaty).
>
> In addition to determining the validity and applicability of the Treaty, the court must determine whether the charged offenses may provide a basis for [Risner's] extradition. This requires that the court determine whether the charged offenses are listed in the Treaty as extraditable offenses. *See, e.g.*, *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981). ....
>
> The court must finally determine whether the evidence supports a probable cause finding as to each charged offense. *Matter of Extradition of Lahoria*, 932 F. Supp. 802, 805 (N.D. Tex. 1996). According to the applicable statute, the court's responsibility is to determine whether, under the Treaty, the evidence is sufficient to sustain the charges that [Risner] committed the offenses alleged in the complaint. 18 U.S.C. § 3184.

*U.S. v. Valentino*, Case No. 4:18-mj-00146, 2018 WL 2187645, at *4 (S.D. Tex. May 11, 2018).

"Although Section 3184 requires the court to decide whether 'evidence [is] sufficient to sustain the charge,' the scope of an evidentiary hearing is not to determine guilt or innocence." *Bonilla*, 2014 WL 934903, at *3. Rather,

> the court fulfills its limited function by conducting a "hearing [that] determines only whether circumstances warrant certification that the respondent is eligible for extradition." *Id.* at *3 (emphasis added).

-18-

Evidentiary factors relevant to the court's determination include:

> 1. Personal and subject matter jurisdiction; 2. Existence of a valid extradition treaty between United States of America and foreign requesting state; 3. Required documents presented in accordance with United States law, translated and duly authenticated by a United States consul; 4. Pending criminal charge in foreign requesting state; 5. Offense charged is extraditable; 6. Offense charged satisfies requirement of double criminality; 7. Respondent is person sought; and 8. Probable cause.

*Id.* at *4 (emphasis added).

*Godwin*, 2014 WL 5093281, at *1-*2 (emphasis omitted).

As the Fifth Circuit has generally explained,

> [c]ertification of eligibility for extradition requires a finding of probable cause that the accused committed the charged offense. Probable cause is "the existence of a reasonable ground to believe the accused guilty of the crime."

*Quintanilla v. U.S.*, 582 F. App'x 412, 415 (5th Cir. 2014) (citations omitted); *accord Ntakirutimana*, 184 F.3d at 427 ("In reviewing a request for surrender, the committing court must determine whether probable cause exists to sustain the charges against the accused."). And Risner asserts that

> [t]he fact that Colombia convicted Mr. Risner does not alter the analysis because the conviction was in absentia. When a conviction is obtained in absentia, courts have treated the extradition request as if it involved a pending charge, therefore still requiring sufficient and independent evidence to justify a reasonable belief that the relator committed the crime. *See, e.g.*, *Germany v. United States*, 2007 U.S. Dist. LEXIS 65676, at *20-21 (E.D.N.Y. Sep. 5, 2007) ("Where a defendant was convicted in absentia, the conviction is merely a charge and an independent determination of probable cause in order to extradite must be made"); *Argento v. Horn*, 241 F.2d 258, 259 n.1 (6th Cir. 1957); *Gallina v. Fraser*, 278 F.2d 77, 78-9 (2nd Cir. 1960). Presence of counsel alone at a trial is insufficient to give an in absentia conviction conclusive effect for a probable cause determination. *See In re Extradition of Ernst*, 1998 U.S.

Dist. LEXIS 10523, at *21-4 (S.D.N.Y. July 14, 1998); *see also United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (finding that relators were convicted in absentia despite having been represented by counsel).

Dkt. No. 24 at 8. Another judge in this circuit recently considered the state of the law on this issue:

> In this case, the parties disagree on the significance of the conviction by the Dutch court. The United States Government argues it is de facto proof of probable cause to support the charges. Valentino contends that when, as here, the conviction is obtained in absentia, it should be considered nothing more than a "mere charge" so that probable cause must still be established independently of the conviction. The courts in this Circuit do not appear to have directly addressed this issue. *See Matter of Extradition of Porumb*, No. 6:18-MJ-00010, 2018 WL 814568, at *4 (W.D. La. Feb. 9, 2018) ("The Government counters that no probable cause determination is required because he was already convicted albeit *in absentia. Assuming without deciding* the Government's position as to the second requirement is correct....") (emphasis added). Courts in other circuits have reached conflicting conclusions. *Compare United States v. Bogue*, No. 98-CRIM.A.-572-M, 1998 WL 966070, at *2 (E.D. Pa. Oct. 13, 1998) ("[A] conviction, although obtained in absentia, provides sufficient evidence of criminality to satisfy the probable cause requirements of 18 U.S.C. § 3184.") *with In Matter of Extradition of Ernst*, No. 97 CRIM.MISC.1 PG.22, 1998 WL 395267, at *7 (S.D.N.Y. July 14, 1998) ("[W]here, as in this case, the conviction is the result of a trial in absentia, the conviction is regarded merely as a charge, requiring independent proof of probable cause.").
>
> Convictions in absentia can generally be organized into three categories: 1) cases in which the accused was present for some or all of the proceeding leading to the conviction, *U.S. ex rel. Bloomfield v. Gengler*, 507 F.2d 925 (2d Cir. 1974) (present for trial at which he was acquitted, not present for appeal that overturned acquittal); *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320 (N.D. Ill. May 14, 1999) (present for majority of trial before fleeing); 2) cases in which the accused was not present but was fully represented by counsel, *Gallina v. Fraser*, 177 F. Supp. 856, 859 (D. Conn. 1959), *aff'd*, 278 F.2d 77 (2d Cir. 1960); and 3) cases in which the accused was entirely unrepresented. *In re Ribaudo*, No. 00 CRIM.MISC.1PG.KN, 2004 WL 213021 (S.D.N.Y. Feb. 3, 2004). Although not universal, the overriding principal in cases involving convictions in absentia appears to be this: when there is

credible evidence supporting the conviction, either because the accused defended himself at trial, had evidence presented on his behalf at trial, or the requesting state has provided evidence supporting the conviction in its request for extradition, a conviction in absentia can be evidence of probable cause. When those indicators are absent, it is reasonable for a court to consider the sufficiency of the evidence when a conviction is obtained in absentia.

*Valentino*, 2018 WL 2187645, at \*4-\*5.

And, in this instance, Article 9 of the Treaty provides, among other things:

(1) The request for extradition shall be made through the diplomatic channel.

(2) The request for extradition shall be accompanied by:

(a) Documents, statements, or other evidence which describe the identity and probable location of the person sought;

(b) A statement of the facts of the case;

(c) The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested;

(d) The texts of the laws describing the punishment for the offense; and

(e) The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense.

(3) When the request for extradition relates to a person who has not been convicted, it shall be accompanied by:

(a) A copy of the indictment or its equivalent issued by a judge or other judicial authority of the Requesting State;

(b) Evidence proving that the person sought is the person to whom the indictment or its equivalent refers; and

(c) Such evidence as would provide probable cause to suspect, according to the laws of the Requested State, that the person sought has committed the offense for which extradition is requested.

(4) When the request for extradition relates to a convicted person, it shall be accompanied by:

(a) A copy of the judgment of conviction imposed by a court of the Requesting State; and

(b) Evidence proving that the person sought is the person to whom the conviction refers.

If the person has been found guilty but not sentenced, the request for extradition shall also be accompanied by evidence to that effect and by a copy of the warrant of arrest.

If the convicted person has been sentenced, the request for

extradition shall also be accompanied by a copy of the sentence imposed and a statement showing to what extent the sentence has not been carried out.

(5) All the documents to be submitted by the Requesting State in accordance with Articles 9 and 10 of this Treaty shall be translated into the language of the Requested State.

(6) The documents which accompany the extradition request shall be admitted into evidence when:

(a) In the case of a request emanating from the United States, they are signed by a judge, magistrate or other judicial officer and authenticated by the official seal of the Department of State and certified by a diplomatic or consular officer of the Republic of Colombia in the United States.

(b) In the case of a request emanating from the Republic of Colombia they are signed by a judge or other judicial authority and are certified by the principal diplomatic or consular officer of the United States of America in the Republic of Colombia.

(7) The Requested State shall review for legal sufficiency documentation in support of an extradition request prior to presentation to the judicial authorities and shall provide for legal representation to protect the interests of the Requesting State before the competent authorities of the Requested State.

Treaty at Art. 9.

The Federal Rules of Criminal Procedure do not govern extradition proceedings under 18 U.S.C. § 3184. *See* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include: (A) the extradition and rendition of a fugitive...."). And "[t]he evidentiary rules governing ordinary civil and criminal trials do not control what may be admitted in an extradition hearing." *Balzan v. U.S.*, 702 F.3d 220, 224 (5th Cir. 2012); *see also* Fed. R. Crim. P. 1101(d)(3) ("These rules – except for those on privilege – do not apply to the following: ... (3) miscellaneous proceedings such as: extradition or rendition...."). Rather, 18 U.S.C. § 3190 provides that

[d]epositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and

admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190.

Under 18 U.S.C. § 3190, a properly authenticated document is admissible at such a hearing. Consequently, authenticated documents may serve as competent evidence in support of a magistrate's determination.

*Balzan*, 702 F.3d at 224 (footnotes omitted); *see also Ntakirutimana,* 184 F.3d at 429-30 ("The district court declined to address Ntakirutimana's challenge to the reliability of the translations. The court stated that, as long as the evidence is authenticated in accordance with § 3190, then it would not consider challenges to the reliability of the translation. We agree with the district court that we can presume that the translations are correct. The extradition court need not independently inquire into the accuracy of the translations submitted with a formal extradition request, because '[s]uch a requirement would place an unbearable burden upon extradition courts and seriously impair the extradition process.'" (footnote and citations omitted)).

## Analysis

Neither the federal statute, 18 U.S.C. §§ 3181, 3184, 3186, 3188-3191, nor the Treaty expressly contemplate a pre-extradition-hearing motion to dismiss an extradition complaint. And judges in this circuit have denied or abated such motions as premature before conducting an extradition hearing under Section 3184.

In *Godwin*, the magistrate judge explained that "Defendant's arguments in

support of dismissal of the petition touch[ed] upon" the evidentiary factors of "[r]equired documents presented in accordance with United States law, translated and duly authenticated by a United States consul"; "[p]ending criminal charge in foreign requesting state"; and "[p]robable cause," as "relevant to the court's determination" of "whether circumstances warrant certification that the respondent is eligible for extradition." 2014 WL 5093281, at *1-*2 (emphasis omitted). The court

concluded that the documentation submitted by the Government of Curaçao provides a legally sufficient basis for the institution and continuation of these extradition proceedings and that pre-hearing dismissal of the petition and release of defendant as sought by this motion are unwarranted. In compliance with 18 U.S.C. § 3184, the Government of Curaçao has presented this court with a detailed, sworn investigation report summarizing its evidence and constituting its criminal complaint against defendant. Record Doc. No. 14-1 at pp. 10-20. As he is empowered to do under Article 74 of the Code of Criminal Proceedings applicable in Curaçao, *id.* at p. 30, the Curaçao Public Prosecutor has issued a murder/manslaughter arrest warrant for defendant based upon the sworn investigation report of two "reporting officers" of the "Korps Politie Curaçao (Curaçao Police Force)." Record Doc. No. 14-1 at pp. 10, 27. This procedure under Curaçao law mirrors the same procedure for charging a criminal offense and commencing criminal proceedings against a defendant by a law enforcement officer's sworn criminal complaint and issuance of a warrant under United States law. Fed. R. Crim. P. 3 and 4. Thus, the documentation presented thus far is sufficient under Section 3184 in that, read as a whole, it constitutes a "complaint made under oath, charging any person found within [this court's] jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention."

The fact that some of the submissions of the Government of Curaçao use the language of "suspicion," as opposed to probable cause, is of no moment for present purposes of deciding this pre-hearing motion to dismiss. Probable cause is the standard that this court will apply when it ultimately determines what it should certify to the United States Secretary of State in connection with this extradition petition. However, that determination is appropriately made at or shortly after the upcoming hearing scheduled for November 3rd. An "extradition hearing is akin to

-24-

a preliminary hearing under Federal Rule of Criminal Procedure 5.1." *In re Extradition of Vargas,* 978 F. Supp. 2d 734, 747 (S.D. Tex. 2013). Such a hearing "is not a trial on the merits to determine whether the accused is guilty or innocent of the underlying criminal allegations." *Id.* (citing *Escobedo,* 623 F.2d at 1102 n.5; *Sayne v. Shipley,* 418 F.2d 679, 685 (5th Cir. 1969)). However, in making a probable cause determination, "courts apply a totality of the circumstances analysis and make a practical common sense decision whether, given all the circumstances, there is a fair probability that the defendant committed the crime." *Id.* at 747-48 (quotations and citations omitted). At a preliminary hearing, as at the scheduled extradition hearing in this case, defendant may challenge the prosecution's evidence and will be offered an opportunity to introduce evidence of his own for the court's consideration. Fed. R. Crim. P. 5.1(e). Only then will this court make a determination of probable cause, based upon its own evaluation of the evidence, regardless of the language employed or any characterization of that evidence by the parties. Making that determination on these motion papers at this time, rather than after the extradition hearing itself, would be premature.

*Godwin*, 2014 WL 5093281, at *2.

But at least one other magistrate judge has dismissed an extradition complaint before conducting a Section 3184 extradition hearing, explaining:

> When a person is convicted *in abstentia*, the judgment is treated as a charge, not a conviction. "Because Defendant [was] convicted *in abstentia*, that conviction is only considered a charge of a crime rather than a conviction for purposes of the Court's probable cause analysis."
> ....
> Article X ¶ 2(c) and 3(b) of the Treaty requires that Italy submit "the texts of the laws describing the essential elements and the designation of the offense for which extradition is requested." These legal texts must be furnished in Italian and English. Article X ¶ 6. According to the Italian court of appeal's order, Ferriolo was convicted of counts "C" and "D" and acquitted on counts "F" and "G." (Doc. 32–1 at 6, 8).
> Under count "C," the laws Ferriolo was convicted of violating include "criminal offense contrary to section 74(1)(2)(3), of Consolidated Text 309/90 ... in order to commit an indefinite number of criminal offenses contrary to section 73." (Id., at 6). Italy provided an English translation of part, but not all of, section 73 (Doc. 32-1 at 22). It did not provide an Italian version of section 73. Missing from the English translation of Section 73 is Article 17, which is referenced in section

73(2); the schedules set out in Article 14, which are referenced in section 73 2(bis); and schedules II and IV set out in Article 14, which are referenced in section 73 2(4)(Id.).

Under count "D," Ferriolo was convicted of laws including sections 73(1) and (4), section 80(1) and (2), section 81(2), and section 112(2) (Id., at 6). The preceding discussion concerning section 73 also applies to count "D." In addition, Italy failed to provide a copy of section 80. It produced section 81 in English, but not Italian, and section 81(2) is missing (Exhibit 5). Italy did not provide an English language version of section 112(2) and it is questionable whether section 112(2) was furnished in Italian.

The Government acknowledges the missing documents, but argues the point of the Treaty's requirements pertaining to documentation is to give the defendant notice of what he is being charged with and the record here is replete with references to cocaine so there can be no doubt about what Ferriolo's convictions involved. The Government also attempted to cure this problem in part by providing a Google translation of section 80(1) and (2). Ferriolo objected and the Court agrees that the translation does not satisfy the requirements of 18 U.S.C. § 3190 which provides for the admission in evidence of properly authenticated documents, or the requirements of Article X of the Treaty which provides for documents bearing the certificate or seal of the Italian Ministry of Justice or Ministry or Department responsible for foreign affairs. Article X ¶ 7.

Now, the Court finds that Italy and the United States violated the express provisions of the Treaty by failing to provide all required documentation to Ferriolo. The Court also finds that the failure to provide all of the documents required by the Treaty unfairly impairs Ferriolo's ability to concede or contest whether the dual criminality requirement in Article II of the Treaty has been met.
....
Taking into consideration the totality of the circumstances, the Court finds that the evidence presented by the United States on behalf of Italy does not support a reasonable belief that Ferriolo is guilty of the crimes charged.

Without English translation copies of certain of the statutes Ferriolo allegedly violated, the Court cannot determine whether there is probable cause to believe the elements of those crimes has been shown. Therefore, as to the charges for which the Court did not receive the applicable statutes, a finding of no probable cause is compelled. The Court must evaluate the sufficiency of the evidence to determine whether there is probable cause to believe Ferriolo violated the statutes for which the necessary documentation has been provided.
....

The extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested." *Castro Bobadilla v. Reno*, 826 F.Supp. 1428 (S.D. Fla.1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994). A finding of probable cause means there is sufficient evidence "to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused." *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (citing *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973)). The Government has not provided all of the documentation which the Treaty requires, and it has failed to show probable cause to believe Ferriolo committed the offenses for which he was convicted *in absentia*.

*Ferriolo*, 126 F. Supp. 3d at 130-01, 1304, 1305 (citations omitted).

Risner's counsel acknowledged at oral argument that the failure to provide Risner with legible copies of required documents that Risner concedes have been properly submitted and authenticated under the Treaty and 18 U.S.C. § 3190 may be remedied by requiring the United States to provide Risner with an original copy of those documents. And the Court, on the record, ordered the United States to do so following oral argument. *See* Dkt. No. 44 at 20-21, 33, 35-36.

The issue here boils down to whether Colombia, through the United States, failed to provide information and documents that the Treaty requires Colombia to submit with its extradition request and that, according to Risner, Colombia still has not provided – and, if so, whether those failures warrant dismissal of the extradition complaint before the Court convenes an extradition hearing under 18 U.S.C. § 3184.

As a preliminary matter, Risner urges the Court not to consider a July 16, 2018, email (in Spanish) from Catherine Díaz Santofimio, to Lisa Roberts and Timothy Stackhouse with an attachment in English, which the United States attached as

Exhibit D to its Response in Opposition to Fugitive's Motion for Bail. *See* Dkt. No. 27-4.

That email and its attachment state:

> From: Catherine Díaz Santofimio
> Sent: Monday, July 16, 2018 3:05 PM
> To: Roberts, Lisa (CRM); Stackhouse, Timothy (CRM)
> Subject: Trámite de extradición activa de José Tito Rodríguez Carlderón
>
> Respetados Lisa y Timothy
>
> De manera atenta, adjunto me permito remitir las normas penales traducidas al idioma inglés, requeridas por dentro del trámite de extradición activa del señor José Tito Rodríguez Calderón.
>
> Quedo atenta a cualquier inquietud que sobre el particular se presente. Cordialmente,
> --
>
> Catherine Díaz Santofimio
> Profesional Especializado
> Oficina de Asuntos Internacionales
>
> www.minjusticia.gov.co
>
> <u>CRIME</u>
>
> Article 323 – Homicide (Amended by Law 40/1993 Art 29). Homicide. He who kills another will be liable to imprisonment from 25 to 40 years.
>
> Article 342. Circumstances of aggravation (Amended by Law 40/1993 Ar. 30). Punishment will be for 25 to 40 years imprisonment if the conduct described in the preceding Article is committed:
> 1. Against an ascendant o descendant, spouse, adopting or adoptive sibling or relative to the second degree of affinity;
> 2. To prepare, facilitate or consummate another crime; or to conceal it, secure its result or impunity for himself or other participants;
> 3. Through any of the forms of conduct provided for in Chapters II and III of Title V, Book 2 of this Code.
> 4. For a promise or promise of a reward, or for gain or some pother abject or futile motive;
> 5. Taking advantage of the activity of immunity from prosecution;

6. With savagery;
7. Placing the victim is a state of defenseless or inferiority or taking advantage of that situation.

8. For terrorist purposes or in the course of terrorist activities or against a person who has been a public servant, journalist, candidate for popular election, community, union, political or religious leader, member of the armed forces, university professor, diplomatic or consular agent at the service of the Nation or accredited to it; for cause or reason of their posts or positions or by reason of the exercise of their functions or against any inhabitant of Colombian territory for their political beliefs or opinions; or against their relatives to the fourth degree of kindred, second of affinity or first civil.

Article 325. Manslaughter. He who kills another beyond his intentions will be liable to the punishment of Articles 323 and 324 reduced by one third to one half.

PRESCRIPTION

Art. 87 Term for the prescription of punishment. Punishment of imprisonment prescribes in the term set for it in the sentence, but may never be less than 5 years. A punishment not involving imprisonment prescribes in 5 years.

Art. 88. Initiation of the term for prescription. The prescription of punishment will begin to run from the date on which the sentence becomes effective.

Art. 89 Interruption of the term for prescription. The prescription of punishment will be interrupted if the person convicted is arrested by reason of the sentence or if he commits a new crime while prescription is running.

*Id.* at 2-3 of 3. Risner urges that this document is not properly authenticated under either Section 3190 or the Treaty's Article 9(6)(b). And the Court agrees that, as of this time, the United States has not submitted a certification to authenticate this email and its attachment apparently quoting Articles 323, 324, 325, 87, 88, and 89. *See id.*

Substantively, Risner's argument comes down to an assertion that Colombia,

through the United States, still has not submitted required information to provide the texts of the laws describing the essential elements and the designation of the offense for which extradition is requested. In his Supplement to Relator's Reply to Government's Response to Motion to Dismiss, Risner summarized as follows:

> On December 9, 1994, Criminal Court Six filed the Decision of the First Instance. Relator was found culpable as a decisive author pursuant to Article 23 of the Criminal Code. Attached hereto as Exhibit A are pages ID 159-60, 164 of the certified English translation of the Decision of the First Instance.
>
> On April 20, 1995, Superior Tribunal of the Judicial District of Cartagena affirmed the conviction of Relator as the decisive agent in the crime of aggravated homicide. Attached hereto as Exhibit B are pages ID 167, 179 of the Decision of Second Instance.
>
> On November 23, 1998, the Supreme Court of Justice, Criminal Cassation Division affirmed the conviction of Relator as the decisive agent in the crime of aggravated homicide. Attached hereto as Exhibit C is page ID 181 of Supreme Court decision.
>
> On June 10, 1999, the Head of Legal Office, Republic of Colombia Ministry of Justice informed the Circuit Criminal Court 3, Cartagena, Bolivar, that the extradition of Jose Tito Rodriguez Calderon must be made through diplomatic channels in compliance with requirements. (Letter attached hereto as Exhibit D.) The instruction specified that certain documentation would be required to make the request, including, a "[c]ertified copy of the provisions of Criminal Law applicable to the case, and those which regulate prescription of criminal action and sentence. (A copy of the Diario Oficial publishing the provisions which describe the crimes for which the person convicted has been found guilty, along with the rules of prescription, should be attached)." (Ex. D.)
>
> The September 6, 2000 diplomatic note requesting the extradition of Mr. Risner states, "Mr. Rodriguez-Calderon was sentenced by the Sixth Criminal Court to a principal penalty of 20 years imprisonment, under charges of being the decisive agent in the crime of aggravated homicide." (Ex. E) (emphasis added.)
>
> Article 9(2)(c) of the Extradition Treaty between the United States and the Republic of Colombia states "[t]he request for extradition shall be accompanied by: [t]he texts of the laws describing the essential elements and the designation of the offense for which extradition is requested[.]" Treaty, Art. 9(2)(c). Despite this matter pending for 20 years, Article 23, which constitutes an essential element and designation of the offense, has

not been provided in accordance with the terms of the Treaty.

Dkt. No. 42 at 1-2.

And, as Risner's counsel succinctly explained at oral argument,

the question boils down to, Your Honor, does the Government's filing in Docket Number 26, which the Government just referred to, and which the Government says cures the failures of the request for extradition, does it, in fact, cure the failures. And I think that's – that's a fundamental question.

So does Docket Number 26, which is the notice of filing of supplement to extradition request filed by the Government, cure the failure to provide the laws as required by Article 9(2)(c), which failure existed in docket filing Number 1, which was the request for extradition.

And so our position is – and I think the Court understands – is because Article 23 is not included in the diplomatic note that is part of Document 26, the failure is not cured, because 323 by its nature requires a designation. Because how can this Court evaluate whether or not there's probable cause in this case with only having 323? 323 just says homicide; he who kills another will be liable to imprisonment for 10 to 15 years.

So I submit to the Court that the decisive author in Article 23 is – is imperative, is an imperative essential element and designation describing the offense of homicide in 323, and it was never included and it's still not included. And we're talking 20 years, Your Honor. These are not technicalities.

The other problem with Docket 26 not curing the defects present in the Treaty request is that there's no mental state identified. And this Court cannot determine probable cause without an understanding and without having in front of it the laws describing the essential elements and the designation of the offense without understanding what the mental state is.

And what I would call the Court's attention to is, for example, in this country. For homicide, we have first degree; we have second degree; we have involuntary; we have voluntary manslaughter. All of those designations come under homicide.

And if this Court was to determine whether or not there was probable cause for a homicide, this Court would have to know are we talking about a manslaughter, are we talking about a first-degree murder, because the designation of the offense is different, because each one of those subcategories of homicide have different essential elements.

We only identify Article 23 because it is repeatedly referenced by

court after court after court in Colombia.

....

[W]hat we have we know cannot be enough. We know that. We know that from reading the opinion in the first instance, the opinion in the second instance, the opinion in the third instance.

In every one of these opinions, the Courts find that Mr. Risner's culpability is based on being a decisive author, and yet Article 23 is never provided.

I would call the Court's attention to the – there was a 196, ID 196. There was a letter from the Republic of Colombia Ministry of Justice, Legal Office, to Dr. Alfredo Beltran Sierra. And this is what I referred to just a moment ago. It was dated June 10, 1999.

So what happened here – so this [prompted] the 2000 request. So in 1999, the Court – and this is in my supplement that was filed today. The head of the legal office of the Republic of Colombia, Ministry of Justice, informs the Circuit Criminal Court 3 what they have to do. They have to go through diplomatic channels in order to obtain the extradition, in order to request the extradition. That's on page 1 of the supplement filed today. It is paragraph 4. But they have to go through diplomatic channels.

And in that letter, Circuit Court 3 is informed that they have to send a copy of the Diario Oficial publishing the provisions which describe the crimes for which the person convicted has been found guilty.

We know from the first decision in the first instance, second, and third that Mr. Risner was found guilty of being a decisive author.

....

And, finally, with respect to the statute of limitations, again, we have competing diplomatic notes as to what the statute of limitations is, because in a diplomatic note dated 7-23-2018, Article 87 is identified, whereas in the diplomatic note filed by the Government dated 1-3-19, Article 90 is identified as the statute of limitations. So with competing identifications of applicable articles, this Court is in no position to determine whether or not probable cause exists. And Mr. Risner can't concede or contest in an extradition hearing whether probable cause exists based on the documents submitted, not only in the extradition request back in 2000 but in the properly authenticated documentation submitted since.

And this Court can certainly not rely on the accuracy of the documents submitted to make a probable cause determination because they conflict. So in summary, we're asking for the Court to dismiss this extradition for a lot of reasons, based on the statute but also based on due process. The essential laws have not been provided, Article 23, any laws regarding state of mind.

....

We have in front of us conflicting laws regarding the application of 323 and the statute of limitations.

....

But I think if the Court thinks about it like this, this motion to dismiss is like a demurrer. It's like a demurrer to a complaint. Because the Treaty says the request shall be accompanied by. Again, not may, not later, not at some point in time.

The request – the request was made in 2000. The request was deficient. There have been several attempts to cure that deficiency. They don't do that. So you can't even evaluate. The point is you can't evaluate based on this request if there is probable cause. And Mr. Risner can't consent or concede whether or not there is probable cause because of the rampant deficiencies.

And so like a demurrer, which is different than a preliminary hearing, this case should be dismissed because, like a demurrer, in a demurrer, the Judge has to look at the complaint and the four corners of the complaint, does it state a cause of action, ... is there proper notice provided.

And the answers to those questions with respect to this request for extradition have to be no, because we don't know the level of guilt. We don't ... have the most fundamental section, ... the decisive agent article upon which Mr. Risner was found guilty. We don't have that. We don't have any laws regarding the necessary state of mind. We don't have it.

So if the Court is looking at the four corners of the Treaty request, the request under the Treaty from Colombia, and the Court considers the properly authenticated documents that have been submitted since 2000, the answer is still the same.

You can never get to the probable cause inquiry, because within the four corners of what's been filed there are glaring deficiencies and they have not been cured. And due process requires that at this point after Colombia has had 19 years to get this right – and Mr. Risner has now been in custody for more than two months. And Colombia has had since mid-December when we filed the motion to dismiss to get it right. I mean, at some point the Court has to say time-up, and that's what I'm asking the Court to say.

Dkt. No. 44 at 18-19, 22, 24-25, 27-29.

The attachment to the United States's Notice of Filing of Supplement to Extradition Request [Dkt. No. 26] provides:

With regard to the requirement defined by the United States Government, to place the extradition of Mr. José Tito Rodriguez-Calderón in order, with regard to the translation of the texts of laws which describe the essential elements, the designation of the crimes for which the citizen is required, the punishment provided, and the time limit on the execution of the sentence, we present out reply to this requirement as follows:

With regard to the description of the conduct, the elements which it describes, and the punishment provided, these elements are defined in Legislative Decree 100/1980. Article 323 of this Decree refers to the crime of homicide and to the aggravating circumstances of the crime of homicide, of which [Rodriguez-Calderón] was accused, in the causes defined in subsections 1 and 4 of Article 324 of that law. The crimes for which Mr. Rodriguez-Calderón was convicted are described in the Criminal Code in force at the time as follows:

ARTICLE 323. HOMICIDE. He who kills another will be liable to imprisonment from 10 to 15 years.

ARTICLE 324. Punishment will be for 16 to 30 years imprisonment if the conduct described in the preceding Article is committed:

1. Against an ascendent or descendant, spouse, adopting or adoptive sibling or relative to the second degree of affinity;

4. For a price, the promise of a reward, or for gain or some other abject or futile motive.

With regard to the time-limit for the execution of the sentence, Article 87 of Legislative Decree 100/1980 states that prescription will operate for criminal sentences as follows:

ARTICLE 87 TERM FOR THE PRESCRIPTION OF PUNISHMENT. Punishment of imprisonment prescribes in the term set for it in the sentence, but may never be less than 5 years. A sentence not involving imprisonment prescribes in 5 years.

Now for the case of Mr. Rodriguez-Calderón, he was convicted by Circuit Criminal Court 6 on December 9, 1994 to the principal penalty of 20 years imprisonment, as determinator of homicide committed against his wife Patricia Gomez de Risner. This decision was appealed, and the case was sent to the Criminal Bench of the Superior Tribunal, which, in a decision of April 20, 1995, decided to confirm the entire judgment of the lower court. This decision was the object of the special recourse to cassation, and the Criminal Cassation Bench of the Supreme Court of Justice issued an order on November 23, 1998, the decision challenged should not be quashed.

In consequence, and attending the terms of the law regarding the

effective date of the sentence, that is, November 23, 1998, it is from that date that we should count 20 years – the term set in the sentence – to arrive at the date of prescription of punishment, that is November 23, 2018.

Therefore, and as given the imminent extinction of the sentence imposed, we request you to give this matter your utmost urgent consideration.

Dkt. No. 26-1 at 4-5 of 25.

And the attachment to the United States's Notice of Filing – Supplemental

Document [Dkt. No. 37] provides:

The Embassy of Colombia presents its compliments to the United States Department of State, Office of the Legal Adviser, and takes the opportunity to refer to the Diplomatic Note dated December 17, 2018 informing the apprehension by the United States Marshal Service for the Northern District of Texas of the Colombian citizen Mr. JOSE TITO RODRIGUEZ CALDERON, who has been requested in extradition by the Government of Colombia.

In this regard, and in response to the question submitted by the Department of State in the aforementioned Verbal Note concerning the interruption of the limitation period of the criminal sanction, the Embassy of Colombia wishes to inform that The Second Court for the Execution of Sentences and Precautionary Measure of the Judicial District of Cartagena, Bolivar, has confirmed that "according to the Colombian Criminal Code, the time elapsed under the statute of limitations on the sentences is interrupted with the capture of the person convicted: Article 90: Interruption of the time elapsed under the statute of limitations for sentences of imprisonment. Under the statute of limitations applied to a sentence of imprisonment, term is interrupted when the person sentenced is apprehended by reason of the sentence or is placed at the disposal of the authority competent to enforce it."

Therefore, and considering that the Government of Colombia was informed by the US Government that the person convicted Mr. JOSE TITO RODRIGUEZ CALDERON was apprehended on November 16, 2018, as of that moment "the term of the statute of limitations was interrupted" for the criminal sanction and the term of 20 years' imprisonment imposed by the Sixth Criminal Circuit Court, Cartegena, began to run.

In this regard, the Embassy of Colombia would like to point out that Mr. JOSE TITO RODRIGUEZ CALDERON was sentenced by

Judgment of December 9th, 1994 of the Sixth Criminal Circuit Court of Cartegena, confirmed in the second instance (appeals) by the Superior Tribunal of the Judicial District of Cartagena, Criminal Division on April 20th, 1995. On November 23rd, 1998, the Supreme Court of Justice of Colombia resolved not to order cassation of the decision taken in the second instance (appeals).

In light of the above, The Second Court for the Execution of Sentences and Precautionary Measures of the Judicial District of Cartagena, Bolivar reiterates that on November 16th, 1998 with the apprehension of Mr. JOSE TITO RODRIGUEZ CALDERON the term running under the statute of limitations was interrupted. Therefore, the Government of Colombia appreciates the contribution made by the Government of the United States in the capture of Mr. JOSE TITO RODRIGUEZ CALDERON in order to ensure that the crimes committed by this Colombian citizen should not go unpunished.

The Embassy of Colombia avails itself of this opportunity to renew to the United States Department of State, Office of the Legal Adviser, the assurances of its highest consideration.

Dkt. No. 37-1 at 1-2.

The United States responds to Risner's arguments for dismissal by asserting that "a number of these deficiencies are really premature because we have not asked the Court in the end to offer these things, authentication issues." Dkt. No. 44 at 11. And, according to the United States,

we believe we're in compliance with the Treaty ... – in other words, we provided in ECF 26 what the Treaty requires, that this argument that has just been – well, supplemented but brought up before, that we have failed to provide more information about Article 23, we believe that's a theory of liability and there's no Treaty requirement for Colombia to provide the elements of Article 23, which is, I think, the heart of their argument. We just disagree. Look at the Treaty. He was convicted of murder, not of some other theory of liability within the murder statute.
....
We believe [Article 23 is] an ancillary issue, that he was convicted of murder, not some theory of liability. And we believe it is expanding the requirements of the Treaty I have already cited under Article 9.
....
Article 88 [is] not required by the Treaty. The diplomatic note does

-36-

explain that we – that we have already filed with the Court the – you know, the statute of limitations and so on.

....

It's not what various appellate courts may say or refer to in various opinions. The question is what does Article 9 require. Our position is the Treaty controls. Article 9 does not require a – the elements of this article talking about a theory of liability.

Specifically, Your Honor, referring back to 26-1 that was filed by the Government, as a supplement filed on December 17, I wanted to direct the Court's attention to page 8 of 26.

....

Page 8 is the English translation of the Department of State. And there's been a lot of discussion here about emails and the diary of the laws and so on. But I think it's clear that the initial request – or submission by Colombia was way overly broad.

And the Secretary of State here, the Department of State, on page 8 of Document 26-1, said, "The request appears to be missing a translation of the essential elements of designation of the offenses for which extradition is requested," which is murder, and the time limit and the punishment and so on.

And the last paragraph on that same page, Your Honor, page 8, "The Department of State reminds Colombia that only the laws applicable to this case need to be included in the request and invites the Government of Colombia to submit a supplement."

Then if you look at that same 26-1 on pages 2 and 3, this is in compliance with 3184.

The second paragraph with regard to the description of conduct, the elements are defined in legislative decree." And then it says, "The crimes" – at the end of that paragraph, "The crimes for which Mr. Rodriguez Calderon were convicted – was convicted are described in the criminal code under Article 323."

It doesn't say he was convicted under some other article.

And so we would submit, Your Honor, that that's in compliance. And, of course, 324 is the punishment, and Article 87 is the statute of limitations.

So we believe we're in compliance with the Treaty, Your Honor, and the various references in court opinions should not be controlling.

*Id.* at 9-10, 30-32.

As the United States has further explained that, in the diplomatic note filed at

Dkt. No. 26, "[i]n accordance with Articles 9(2) and 9(5) of the Treaty, Colombia

responded with four pages of legible information, in Spanish and in English, concerning the provisions relevant to the case against Risner – namely, Articles 323 (homicide), 324 (aggravated homicide), and 87 (the term for the prescription of punishment) (see ECF No. 26-1 at Page ID 410-15), thereby satisfying Article 9 of the Treaty and mooting Risner's complaint that ECF No. 1-1 at Page ID 25-39 was untranslated." Dkt. No. 36 at 9. And, the United States asserts,

> Risner's first complaint is that Colombia has provided an excerpt of Article 324 rather than the entire statute. He cites no authority for the proposition, which is contrary to Article 9 of the Treaty, that Colombia must provide Article 324 in its entirety. Risner acknowledges that the Colombian court found two aggravating factors applicable to him under Article 324 – namely, that he acted against his spouse and that he acted in the interest of gain. (*See id.* (citing ECF No. 1-1 at Page ID 163).) He further acknowledges that Colombia's supplement (ECF No. 26-1 at Page ID 412) excerpts Article 324 to include these same two factors (conduct against a spouse and conduct for gain). (*See id.*) Nevertheless, he invents a Treaty requirement for Colombia to provide the entire Article 324 because while Colombia's translation of the statute refers to these two aggravating factors as the first and fourth aggravating factors in the statute, the English translation of one of the Colombian court decisions refers to them as the third and fourth aggravating factors. This is a red herring because the court decision in Spanish (ECF No. 1-1 at Page ID 69) expressly refers to these aggravating factors as "las causales primera y cuarta del art. 324," i.e., the first and the fourth, not the third and the fourth. Accordingly, the court decision and the statute as provided are consistent.
>
> Risner's second claim, for which he cites no legal authority, is that an apparent typographical error in an exhibit the United States government attached to its memorandum opposing bail (ECF No. 27-4) somehow can vitiate everything Colombia has submitted to date under cover of diplomatic note with respect to the twenty-year sentence everyone agrees Risner received under Article 324 for aggravated homicide. Not so. Everything Colombia has submitted under cover of diplomatic note consistently indicates that aggravated homicide in violation of Article 324 carries a penalty range of 16-30 years, and that Risner received a sentence of 20 years, which falls within the 16-30 year penalty range, for the very same crime. (See, e.g., ECF No. 1-1 at Page ID

11 (diplomatic note from Colombia to the United States, stating that the fugitive "was sentenced ... to a principal penalty of 20 years imprisonment, under charges of being the decisive agent in the crime of aggravated homicide"), 163-64 (referring to the 20-year sentence and to the "limits of 16 to 30 years"), 167 (referring to "principal penalty of 20 years imprisonment, as the decisive agent in a homicide against the person of his wife"), 181 (referring to 20-year sentence for aggravated homicide), 190 (referring to the "purpose of the crime which was to make a profit").) The Court will recall that when Risner made a meritless assertion that he deserved bail because the Colombian limitations period had lapsed, the government submitted, as an exhibit to its opposition to the bail motion, an email from Colombia's Ministry of Justice to show that Risner's arrest in the United States interrupted the Colombian limitations period. That same email contains an apparent, unrelated typographical error, to the effect that both homicide and aggravated homicide would carry identical penalty ranges of 25-40 years despite a statutory regime that distinguishes between the aggravated and unaggravated versions of the offense. This apparent typographical error does not vitiate everything Colombia has said to date under cover of diplomatic note about Article 324 and the sentence Risner undisputedly received thereunder.

*Id.* at 15-17.

The question before the Court on this Motion to Dismiss, therefore, appears to be does the Treaty's requirement that a "request for extradition shall be accompanied by: ... (c) The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested; (d) The texts of the laws describing the punishment for the offense; and (e) The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense" require Colombia to provide the text of laws describing the required mental state for Risner's aggravated homicide conviction and the requirements for Risner's being found guilty of being a decisive author as well as non-conflicting texts of the laws regarding the application of Colombia's Article 323 and the statute of limitations.

To the United States's point that, even if it does, Section 3184 does not require Colombia to provide it before the actual extradition hearing, the Court is persuaded that Risner has the better argument that, at this point, while the Court could perhaps manage the extradition hearing without receiving this information in advance (despite the Treaty's Article 9 requirement that a "request for extradition shall be accompanied by" these materials), Colombia's failure to provide this information – if the Treaty does require it to do so – materially impedes Risner's ability to evaluate and decide whether to concede or to contest (and, if so, how) the required probable cause showing.

What Colombia has provided in authenticated documents as to the essential elements and the designation of the offense for which Risner's extradition is requested and the punishment for the offense is that, under Article 323, for the crime of Homicide, "[h]e who kills another will be liable to imprisonment from 10 to 15 years" except that, under Article 324, "[p]unishment will be for 16 to 30 years imprisonment if the conduct described in the [Article 323] is committed" "1. Against an ascendent or descendant, spouse, adopting or adoptive sibling or relative to the second degree of affinity" or "4. For a price, the promise of a reward, or for gain or some other abject or futile motive."

In a certified response, with Spanish and English translations, provided to the United States by the Government of Columbia and undisputedly admissible at an extradition hearing under Section 3190, Colombia has certified that, "[w]ith regard to the description of the conduct, the elements which it describes, and the punishment provided, these elements are defined in Legislative Decree 100/1980;" that "Article 323

of this Decree refers to the crime of homicide and to the aggravating circumstances of the crime of homicide, of which [Rodriguez-Calderón] was accused, in the causes defined in subsections 1 and 4 of Article 324 of that law"; and that "[t]he crimes for which Mr. Rodriguez-Calderón was convicted are described in the Criminal Code in force at the time as" quoted immediately above. Dkt. No. 26-1 at 1-2.

But Risner also asserts that that cannot be all of the applicable essential elements and the designation of the offense for which Risner's extradition is requested because there is no description of the required mental state for Risner's homicide conviction and the requirements for Risner's being found guilty of being a "decisive author" or "decisive agent," as each appellate decision found. Risner urges that his case presents the same circumstances as the Court found in dismissing the complaint in *Ferriolo*, where the Court found that the requesting country had not provided the text, in some cases in either language, of the statutes of which the respondent had been convicted. But, unlike in *Ferriolo*, Risner is "not asking the Court to perform a probable cause analysis now" because, as his counsel explained at oral argument, "[w]e don't believe the Court can." Dkt. No. 44 at 35.

First, based on these submitted materials, the Court determines that any inconsistencies with the English translation of one appellate decision referring to the applicable portions of Article 324 as the third and fourth aggravating factors does not warrant dismissal. So, too, the Court is not persuaded that dismissal is appropriate where the same email [Dkt. No. 27-1] that Risner's counsel urges the Court to ignore is the only basis for his argument that Colombia has presented conflicting texts of the

laws regarding the application of Colombia's Article 323 and the statute of limitations. As the United States points out, everything Colombia has submitted under cover of diplomatic note consistently indicates that aggravated homicide in violation of Article 324 carries a penalty range of 16-30 years.

Second, in extradition proceedings, courts consistently adhere to the so-called Rule of Non-Inquiry "out of respect for other nation's sovereignty 'and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles.'" *Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009) (quoting *Emami v. United States Dist. Court*, 834 F.2d 1444, 1449 (9th Cir. 1987)). Correspondingly, courts defer to the requesting nation's interpretation of its own law. *See, e.g.*, *Skaftouros v. United States*, 667 F.3d 144, 154-61 (2d Cir. 2011); *In re Extradition of Jimenez*, No. 14-2319-SAG, 2014 WL 7239941, at *1-*2 (D. Md. Dec. 16, 2014) (rejecting claim that extradition to Costa Rica was not permitted because statute of limitations lapsed for sentencing, where Costa Rica provided documents explaining that statute of limitations was tolled) (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2d Cir 1976) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another nation.")). What constitutes the laws describing the essential elements and the designation of the offense for which extradition is requested, the laws describing the punishment for the offense, and the laws describing the time limit on the prosecution or the execution of punishment for the offense is a matter of Colombian law as to which Colombia has provided its answer,

as explained above.

Colombia has specifically provided what its officials represent to be the essential elements of the offense for which extradition is requested. *See* Dkt. No. 26-1 at 1-2. Having been presented with that information, the Court will not further engage in a disfavored effort to interpret Colombian law to the contrary by attempting to determine the significance under Colombian law of a finding in the appellate decisions that Risner was culpable under Article 23, as Risner urges the Court to do. *See* Dkt. No. 50 at 5 ("It is undisputed that Risner was found culpable under Article 23. Colombia has branded Risner's culpability as a decisive agent or author pursuant to Article 23 in all of its legal opinions; and, pursuant to these same opinions, Risner was not held culpable under any other theory. (*See* Supp. to Rel. Reply to Gov. Resp. (Dkt. No. 42.) Therefore, Risner acting as a decisive agent or author is, by necessity, an essential element of his guilt." (footnote omitted)).

This case does not present the extraordinary circumstances that would warrant granting a pre-extradition-hearing motion to dismiss an extradition complaint.

### Conclusion

For the reasons explained above, the Court DENIES Risner's Motion to Dismiss [Dkt. No. 23].

SO ORDERED.

DATED: March 11, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE